Maycel W. FITZGERALD, Appellant,

v.

Robert W. McCHESNEY, Jr., Trustee under a Trust Indenture and Executor named in the Will of Francis E. Fitzgerald, deceased, Appellee.

No. 17754.

United States Court of Appeals District of Columbia Circuit.

Submitted Dec. 3, 1963.

Decided April 16, 1964.

Mr. Henry M. Fowler, Washington, D. C., submitted on the brief for appellant.

Mr. Robert W. McChesney, Jr., Washington, D. C., submitted on the brief for appellee.

Before BAZELON, Chief Judge, and BASTIAN, and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

This litigation is before us because of an incompatibility between husband and wife with respect to the religious training and education of their three minor children. As is so often the case, it is the welfare of the children which may be jeopardized by the conflict between the parents. Having been either unable or unwilling in life to make his wishes prevail, the father has made some effort to have the last word from beyond the grave by means of the conditional disposition he has made of his property. In the view we take of the record before us, we think it premature to decide whether this effort, assuming its implementation, can prevail as against the assertion that, on the facts of this case, the interests of the children themselves override the clashing views of the parents. Because the proceedings in the District Court appear to us to have been founded upon a mistaken construction of the father's directions, we think that judicial intervention was unnecessarily invoked and should have been withheld.

I

Appellant is the widow of one Francis E. Fitzgerald, who died February 27, 1961.[1] The children of the marriage were three in number, of whom the oldest was about thirteen at the time of Fitzgerald's death. The marriage itself had been of almost exactly twenty years' duration, it having been entered into on January 17, 1941. Fitzgerald was a Catholic who had been married before, and it was for this reason that he informed appellant at the time of their marriage that the basic rites of his church would be denied him so long as he lived with her as man and wife. For a long period of time after the marriage, Fitzgerald attended no church. In the case of the children, although bap-

1. The facts as set forth hereinafter are taken from a stipulation filed by the parties which recited what the testimony of appellant and appellee would be if a hearing were held.

tized as Catholics, they did not attend churches or schools of that faith, nor were they permitted by their father to attend any other church.

In 1956 Fitzgerald had a second heart attack, after which he decided to discontinue marital relations with appellant in order that he might receive communion and the last rites from the Catholic Church. It was apparently at about this time that appellant began taking the children with her to Sunday school and services at a Protestant church. This continued until Fitzgerald's death, as well as did the attendance of the children in the public schools. The record indicates that it was during these years that strains developed between appellant and Fitzgerald over these matters, growing to a point where Fitzgerald suggested a voluntary separation as the best solution. But he was unable to work this out, or to effect a transfer of his children to a parochial school. The home and family thus remained in this unbroken, albeit uneasy, situation until his death.

In 1953 Fitzgerald had executed a will in favor of appellant and the children.

About 1960 he started consulting with his lawyer (appellee here) about his domestic difficulties in seeking to commit his children to Catholic training and education. One result of these consultations was the execution on April 21, 1960, of a trust agreement, naming appellee as trustee to receive the proceeds of the life insurance policies held by Fitzgerald, and to hold such other property as might be transferred by Fitzgerald to the trust. A few days later, Fitzgerald executed a new will which, at the least, left Fitzgerald's interest in a parcel of real estate to the trustee under the trust agreement. The effect of these transactions was to cause Fitzgerald's property upon death to come under the trust agreement and to be administered and eventually disposed of under the terms of such agreement.[2]

It is the trust agreement which is in issue before us, and the questions presented arise out of Article Second thereof, which is set forth in full in the margin.[3] The terms of Article Second may be summarized in this wise: The income and principal of the trust estate are to

2. The 1960 will is not in the record before us, nor is there any other indication of the precise extent of Fitzgerald's property. We do not know, therefore, whether any provision was made by him for his children apart from the trust instrument. The record is similarly barren of any information with respect to the resources available for the support of the children apart from the father's property.

3. *"ARTICLE SECOND:* Upon the death of the Grantor, the income and principal of this Trust Estate as it then consists including all accrued and accumulated net income shall be held for the benefit of his wife, Maycel W. Fitzgerald, and the children of his marriage with the said Maycel W. Fitzgerald, whether now in being or hereafter born or adopted by the Grantor, in such amounts as may appear proper, in the sole discretion of the Trustee, subject and according to the following provisions:

"A. It being the Grantor's moral obligation to do what may be possible to raise his children in and according to the Roman Catholic religious teaching, and in Catholic schools, where practicable, the Trustee shall, so long as he

be satisfied that said children are being so raised, administer this Trust Estate as follows:

"(1) The entire income and corpus shall, subject to the provisions of Paragraph (2) of Article Second (A), be administered for the support, maintenance, education and welfare of the said children and each of them, until the surviving youngest of said children in being at the date of this instrument shall have reached the age of 21 years, at which time the entire net trust estate shall be distributed to the said wife of the Grantor, if then living, or, if not, then in equal shares, share and share alike to such of the children (natural or adopted) of the Grantor and Maycel W. Fitzgerald as may then be alive.

"(2) In the absolute discretion of the Trustee, the trust estate shall be available for the support and maintenance, and welfare of the said Maycel W. Fitzgerald, taking into consideration her other means."

"B. In the event that the Trustee is not satisfied that the said children are being or have been so raised, he may give notice to the Grantor's said wife or oth-

be devoted in the first instance to the support, maintenance, education and welfare of the children, with any undistributed balance, at the time the youngest child becomes 21, to go to appellant or, if she be not then living, to the children. If and when, however, the trustee is not satisfied that the children are being raised in the Catholic faith and educated in Catholic schools, he may thereafter apply both principal and income for the use and benefit of any children in the charge of any Catholic charitable institution or order until the youngest of Fitzgerald's children becomes 21, at which time the entire remaining trust estate shall go to such charitable order or institution as the trustee may select.

This action was initiated by the trustee in the form of a suit for declaratory judgment. His allegations are that he has come into possession of the trust *res;* that he has been confronted with the defendant-widow's refusal to conform the childrens' education and training to that specified in the agreement; that he considers himself under the necessity of administering the trust in accordance with the terms of the agreement; and that he is fearful of diverting the benefits of the grantor's property from the grantor's own children to others because of possible personal liability in the event the trust terms are ever held invalid. The answer alleges the invalidity of these terms, and envisages the holding of the trustee to strict accountability. Plaintiff-trustee moved for summary judgment, and it was urged in opposition that the trust agreement was invalid in

two respects, namely, its religious conditions conflicted with public policy, and, to the extent that such conditions become operative, there was inadequate precision and certainty in the identification of the alternative beneficiaries. The District Court was not persuaded by either of these objections, and entered judgment to the effect that not only was the trust agreement valid in all respects but that the trustee had the "legal right and obligation" to administer it in accordance with its terms. This appeal is from that judgment.

## II

Our difficulty with the proceedings had in the District Court resides in the assumptions seemingly entertained there with respect to the obligations imposed upon the trustee by Article Second. That provision is something less than a model of clarity in draftsmanship, but we think a fair reading of it in its entirety is consistent with these conclusions: The primary objects of Fitzgerald's concern continued to be his own minor children and, secondarily, appellant as the mother of them and his wife of twenty years' standing. This seems evident to us from the introductory language of the Article, as well as the specific directions in sub-paragraph (1) that the entire income and principal shall, subject to the absolute discretion reposed in the trustee by sub-paragraph (2) to channel the same funds at any time to appellant, be devoted to the support and education of the children during their minorities, with distribution of the corpus thereafter to appellant. If, however, the children are

---

er guardian of said children, or any of them, that the trust estate shall thenceforth be administered under this Article Second (B) as follows:

"(1) The Trustee shall have the authority, in his absolute discretion, to use both the corpus and income of the trust estate for the welfare of any child or children being cared for by any Catholic charitable order or institution until the youngest of said children of the Grantor's in being at the date of this instrument shall have reached the age of 21 years, at which time the entire net trust estate shall be distributed to such charitable order or institution as to said Trustee shall seem appropriate, after deduction for all charges against said trust estate.

"(2) The Trustee shall, however, have authority to expend such amounts as he may deem proper, in his absolute discretion, to or in favor of any of said children of the Grantor and/or the said Maycel W. Fitzgerald in the event of any emergency need due to medical reasons."

not, to the trustee's satisfaction, being trained and educated in Catholic teachings and schools, the trustee "may" elect to divert the benefits of the trust estate to other children being cared for by a Catholic charitable institution or order, with the corpus ultimately to be distributed to a Catholic charity which the trustee deems appropriate.

■ We stress the word "may" because, in this context of the possible diversion of a father's substance from three minor children for whom he has otherwise manifested affectionate concern, we believe its use, as contrasted with the alternative "shall," to have been of even greater significance than usual. We do not read Article Second as requiring the trustee under any and all circumstances to terminate his support of the grantor's children if and when he concludes that they are not being trained and educated in the Catholic tradition. We think the Article says in so many words that, in this contingency, the trustee *may* withdraw that support and direct it elsewhere. He has, in other words, a discretionary authorization from the grantor to do so, but, as in the case of discretionary grants generally, he need not exercise that discretion invariably in favor of diversion. In deciding what to do, presumably he would take into account, against the background of a father's natural preference for his own, the current facts with respect to the degree of need by such children for the help which the trust resources would otherwise provide, and any and all other circumstances relating to the special situations or requirements of such children.

The father, as of the time the trust was created, could not possibly have foreseen all of the contingencies which might arise and, certainly in the absence of proof of provision for the children by him or someone else on a minimum basis, we do not think that he intended for his aid to be necessarily and irrevocably cut off in the event his hopes as to religious training were not realized.

We conclude that the case was presented to, and considered by, the District Court on a wholly different—and we believe, mistaken—construction of the trust instrument. The complaint, fairly read, asserts a need for declaratory relief for the reason that the trustee has no option but to divert the benefits from the grantor's children because of the current character of their religious training and education. It is said that, since the trustee must divert, so is he correspondingly placed in danger of personal liability if the trust provisions are ultimately held ineffective. Thus, the relief requested is that the trustee be adjudged to have "the authority and duty * * * to administer the trust according to Article Second B." The answer to the complaint appears to accept the trustee's allegations as to the inflexible position in which he finds himself; and the controversy was submitted to the court for resolution on these assumptions.

■ In ruling upon the validity of the trust instrument as so construed, we think that the District Court was anticipating an issue which might never arise and was granting declaratory relief under circumstances which did not establish the need for it.[4] We must assume that

---

4. A brief memorandum opinion accompanied the District Court's decision to grant the motion for summary judgment. In it the court addressed itself to the merits of both of the grounds advanced by appellant as invalidating the trust, *i. e.*, public policy, and insufficient certainty and definiteness as to the determination of the alternative beneficiaries. The second issue does not, of course, arise unless the first is determined favorably to appellee. As to such first issue, the court upheld the validity of the trust, noting that, although

the question appears to be an open one in the District of Columbia, there is a majority and a minority view to be gleaned from decisions in other jurisdictions. It described itself as persuaded by the "great weight of authority" representing the majority view, and listed a number of citations to this end, together with one Pennsylvania case as reflecting the minority view.

In all of the cases cited for the majority view, we note that the election to choose between the benefits and the religious con-

the appellee was not aware of the discretion allowed him. We do not know what his course of action may be, or might have been, were he so informed. We are therefore presented with a case that will not materialize until the trustee, acting in the tradition of fiduciaries vested with discretionary powers, arrives at a judgment as to which way he will exercise his discretion. That judgment is to be informed by many current and highly relevant facts not revealed in this record. Those facts might be such as to cause a trustee, fully cognizant of the range of his discretionary authority, to conclude not to divert. There would then, of course, be no occasion to call upon a court to rule upon the validity of a contrary course of action. The declaratory judgment is a valuable addition to the array of modern judicial remedies, but it was never intended as a device for relegating to the courts responsibilities reposed initially in private parties. To render a decision in this case, without some indication of how the discretion is to be exercised, amounts to giving an advisory opinion upon questions of law which, however interesting, have not been rendered immediate and insistent by the pressures of discarded alternatives.

 Since the complaint, read in the light of what we consider to be the proper construction of the trust instrument, did not present a matured and necessary occasion for declaratory relief, we reverse the order granting summary judgment and remand for further proceedings not inconsistent with this opinion.

It is so ordered.

---

dition was to be made either during, or upon the attainment of, adulthood. None involved the immediate relationship of father and minor children. This latter was not even true in the Pennsylvania case, In re Devlin's Trust Estate, 284 Pa. 11, 130 A. 238 (1925), although that case is otherwise very similar to this in that the grandfather's gift for the support and education of small children in effect left those children vulnerable to the choice which the widowed daughter-in-law might make as between her own religious preferences and the children's economic welfare. For a more recent expression of disapproval of the imposition of rigid religious conditions upon the rearing of minor children, see Lynch v. Uhlenhopp, 248 Iowa 68, 78 N.W.2d 491 (1956). See also In re Blake, [1955] Irish Reports 89; I SCOTT ON TRUSTS § 62.7. Cases in this area are perhaps not susceptible of reasoned disposition by automatic reference to either the so-called majority or minority view. At least in the father-minor child situation, there may be social and community interests with respect to responsibility for the support and education of children which do not readily lend themselves to formulation solely in terms of the weighing, so prevalent in the older cases, of the privilege of unfettered disposition of one's property against the traditional freedom to choose freely from among differing forms of religious expression and worship.