**ADULT VIDEO ASSOCIATION; Poe, Inc.; and Roe, Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE; William Barr; Patrick Trueman; Edward Bryant; and Dan L. Newsom, Defendants–Appellees.**

No. 94–5617.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1995.

Decided Dec. 7, 1995.

Michael F. Pleasants, James S. Cox & Associates, Memphis, TN, J. Michael Murray (argued and briefed), Steven D. Shafron, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for Plaintiffs-Appellants.

Robert M. Williams, Jr., Asst. U.S. Attorney, Memphis, TN, Stuart M. Gerson, Barbara L. Herwig, Appellate Staff, Patricia A. Millett (briefed), Mark B. Stern (argued), Civil Division, Kevin Simpson, Vincent M. Garvey, U.S. Department of Justice, Washington, DC, for United States Department of Justice.

Robert M. Williams, Jr., Asst. U.S. Attorney, Memphis, TN, Stuart M. Gerson, Barbara L. Herwig, Appellate Staff, Patricia A. Millett, Civil Division, Kevin Simpson, Vincent M. Garvey, U.S. Department of Justice, Washington, DC, for William Barr, Patrick

Trueman, Edward Bryant, Dan L. Newsom, for Defendants-Appellees.

Before: MARTIN and BOGGS, Circuit Judges; HOOD, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Adult Video Association, Poe, Inc., and Roe, Inc., ("Adult Video"), appeal the dismissal of this declaratory judgment action. The district court found that Adult Video lacked standing because it had not alleged a sufficient injury in fact, and that there existed no "case" or "controversy." We agree with the district court that Adult Video has not alleged a sufficient injury or threat of injury, and does not have standing to pursue declaratory relief. We also believe that, even if Adult Video had standing, its claim is not yet ripe for review.

On October 22, 1992, Adult Video filed this complaint against the United States Department of Justice and others in the United States District Court for the Western District of Tennessee. Although we do not address the issue, we are not even certain that any of the named defendants are subject to suit in this case and will proceed with our discussion by collectively referring to the defendant parties as "the United States."[1] Adult Video sought a declaratory judgment under 28 U.S.C. § 2201 that the adult film "After Midnight" is not legally obscene in the Western District of Tennessee, and therefore is protected by the First Amendment. In its complaint, Adult Video stated that it is a nonprofit trade association comprised of members who produce, manufacture, distribute, sell, and rent sexually explicit adult videotapes, and that several of its members wished to ship, distribute, sell, and rent the adult film "After Midnight" in the Western District of Tennessee.

In support of its argument that declaratory relief should have been granted, Adult Video claims that: 1) "After Midnight" is a sexually explicit adult film; 2) Adult Video believes the film would not be considered obscene under the contemporary community standards in the Western District of Tennes-

see; 3) if the film were to be considered obscene under contemporary community standards, it would subject Adult Video's members to criminal prosecution; 4) the federal authorities regularly enforce the antiobscenity laws in the Western District of Tennessee; 5) this threat of prosecution "chills" Adult Video's First Amendment right to disseminate non-obscene materials; and 6) a declaratory judgment applying the contemporary community standards to "After Midnight" is appropriate to determine whether the film is constitutionally protected under the First Amendment.

The United States moved to dismiss the complaint on standing and ripeness grounds, arguing, in part, that Adult Video had not alleged a cognizable injury. On March 31, 1994, the district court granted the motion and dismissed the complaint, holding that Adult Video lacked standing to pursue its claim. Adult Video timely filed an appeal to this Court.

We agree with the district court that Adult Video does not have standing to pursue its claim for declaratory relief. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court set forth the elements inescapably necessary to confer standing under Article III of the Constitution's "case or controversy" requirement:

"[T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

---

* The Honorable Joseph M. Hood, United States District Judge for Eastern District of Kentucky, sitting by designation.

1. As the United States points out, waiver of sovereign immunity is a mandatory jurisdictional prerequisite in suits against the United States. Although we decide this case on other grounds, Adult Video apparently has failed to establish a waiver of sovereign immunity here.

*Id.* at 560–61, 112 S.Ct. at 2136 (footnote, citations, and internal quotations omitted). The Supreme Court recently has reaffirmed these requirements. *United States v. Hays,* — U.S. —, —, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995). In addition, the party seeking entrance to the federal forum bears the burden of alleging "facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975). A generalized grievance against governmental conduct is insufficient to confer standing upon a party who wishes to enter federal court. *Hays,* — U.S. at —, 115 S.Ct. at 2435 (citations omitted). In the First Amendment context, the Supreme Court explains: "[I]n order to have standing, an individual must present more than 'allegations of a subjective 'chill'.' There must be a 'claim of specific present objective harm or a threat of specific future harm'." *Bigelow v. Virginia,* 421 U.S. 809, 816–17, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600 (1975) (quoting *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972)).

■ Adult Video's primary argument is that the federal government regularly enforces the federal antiobscenity laws in the Western District of Tennessee, and the fear of this potential future prosecution has chilled its distribution of "After Midnight." However, the mere fact that antiobscenity laws may work a chill on the distribution of constitutionally protected materials does not in itself confer standing upon a potentially aggrieved party. *Bigelow,* 421 U.S. at 816, 95 S.Ct. at 2229; *see also Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 60, 109 S.Ct. 916, 925, 103 L.Ed.2d 34 (1989); *Laird,* 408 U.S. at 13–14, 92 S.Ct. at 2325–26. It is true that criminal antiobscenity statutes may induce self-censorship and some hesitation on those parties wishing to disseminate possibly obscene materials. Nonetheless, this subjective chill, without more, simply does not confer standing on a party. *Fort Wayne Books, Inc.,* 489 U.S. at 60, 109 S.Ct. at 925.

■ Further, the "chill" on First Amendment expression normally stands as the *"reason* why the governmental imposition is in-valid rather than as the harm which entitles [a party] to challenge it." *United Presbyterian Church in the United States v. Reagan,* 738 F.2d 1375, 1378 (D.C.Cir.1984) (emphasis added). Here, however, Adult Video is not even claiming that federal antiobscenity laws are invalid. Instead, it merely claims that the fact that the federal government regularly enforces *concededly valid* criminal antiobscenity laws "chills" the distribution of what Adult Video believes to be constitutionally protected materials. In fact, Adult Video devotes several pages of its brief to an expanded recitation of the various federal laws under which it may be prosecuted for distributing "After Midnight," presumably to show that the alleged threatened harm is actual and imminent. However, given the fact that Adult Video is not challenging the constitutionality of any of the laws under which it might be prosecuted, presumably no unconstitutional harm would occur if the government does actually prosecute Adult Video's members for distributing "After Midnight." If the government prosecutes Adult Video's members and "After Midnight" is determined to be obscene, that is a perfectly legitimate instance of the federal government enforcing its criminal law. If the government prosecutes Adult Video's members and the film is not obscene, then, of course, the government cannot convict them under federal antiobscenity law and Adult Video's members will be free to carry on their business. Adult Video's argument that a general fear of prosecution under an unchallenged federal law is sufficient to establish standing clearly is without merit. A party must show a more immediate threat than the unsurprising proposition that the government generally tends to enforce its laws. *See Poe v. Ullman,* 367 U.S. 497, 507, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961).

■ In response, Adult Video argues that, because the federal authorities regularly enforce antiobscenity laws against persons distributing similar material in the Western District of Tennessee, this threat of prosecution is both "real" and "immediate." Relying on *Adult Video Ass'n v. Barr,* 960 F.2d 781 (9th Cir.1992), *vacated on other grounds sub nom. Reno v. Adult Video Ass'n,* — U.S.

——, 113 S.Ct. 3028, 125 L.Ed.2d 716 (1993), Adult Video claims that the government's vigorous enforcement of antiobscenity laws presents a threat of present injury sufficient to satisfy constitutional standing requirements. However, *Adult Video Ass'n v. Barr* involved a pre-enforcement *facial* challenge to the RICO statute's obscenity provision and is inapposite. We believe that, as a facial challenge to an obscenity statute, *Adult Video Ass'n v. Barr* fits squarely within the "overbreadth" exception to traditional standing requirements. *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 393–94, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988); *Dambrot v. Central Michigan Univ.,* 55 F.3d 1177, 1182 (6th Cir.1995). The "overbreadth doctrine provides an exception to the traditional rules of standing and allows parties not yet affected by a statute to bring actions under the First Amendment based on a belief that a certain statute is so broad as to 'chill' the exercise of free speech and expression." *Dambrot,* 55 F.3d at 1182 (citations omitted). Here, however, Adult Video is *not* facially challenging the constitutionality of federal criminal obscenity law. Rather, Adult Video seeks a declaration that its intended future conduct is not criminal under admittedly valid federal antiobscenity law. Given that Adult Video brings what is in essence a *pre-application, as applied* challenge to federal law, Adult Video's claim does not fall within the "overbreadth" exception to normal standing requirements. Instead, Adult Video must establish that the statutes have been or will be applied *to it* in order to show the required specific threat of prosecution necessary to satisfy standing requirements. *Laird,* 408 U.S. at 13–14, 92 S.Ct. at 2325–26; *see also O'Shea v. Littleton,* 414 U.S. 488, 498, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974) (denying standing where the plaintiffs' "vulnerability to the alleged threatened injury from which relief is sought is necessarily contingent upon the bringing of prosecutions against one or more of them").

Adult Video has failed in this regard. Adult Video points to no statements or actions on the part of the federal government that would indicate that the government intends to prosecute Adult Video's members if they distribute "After Midnight" in the West-

ern District of Tennessee. *See Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974) (finding standing where the state stipulated that the statute at issue prohibited plaintiff's conduct and the plaintiff had been threatened twice with arrest). Indeed, because Adult Video has not undertaken any activity with respect to the film "After Midnight" in the Western District of Tennessee, it has done nothing with that film for which it could be prosecuted under federal law in that District.

In sum, the district court correctly held that Adult Video failed to allege a constitutionally adequate cognizable injury in its complaint. At best, Adult Video alleges a hypothetical harm *if,* at some point in the future, its members decide to distribute "After Midnight" in the Western District of Tennessee; the government decides to prosecute for that distribution; and *if* a jury subsequently finds the film to be constitutionally protected material. This is precisely the sort of hypothetical future harm prohibited by current standing requirements.

 In addition, for somewhat similar reasons, we believe Adult Video's claim is not ripe for review. Determining whether a case is sufficiently ripe for adjudication often "bears close affinity to questions of [standing].... " *Warth,* 422 U.S. at 499 n. 10, 95 S.Ct. at 2205 n. 10. However, the two doctrines are not identical. Cases sometimes arise in which a party satisfies the constitutional prerequisites for standing, and yet prudential considerations weigh in favor of declining jurisdiction. In *Brown v. Ferro Corp.,* 763 F.2d 798 (6th Cir.), *cert. denied,* 474 U.S. 947, 106 S.Ct. 344, 88 L.Ed.2d 291 (1985), this Court explained that "[t]he ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Id.* at 801. As a result, ripeness analysis has developed its own set of issues to which a court must address itself in determining whether to decide the case before it. The basic rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagree-

ments." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

Ripeness requires us to weigh several factors in deciding whether to address the issues presented for review. First, we examine the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass." *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir.1988). Second, we consider whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims. *Id.* at 195. Finally, we must assess the "hardship to the parties if judicial relief is denied at [this] stage" in the proceedings. *Id.; see also Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967).

Here, Adult Video's claim fails to satisfy each of the three prongs of the ripeness inquiry. First, even if we assume that Adult Video has alleged an unconstitutional harm, it has not established that the harm will come to pass. Because Adult Video can point to no action or statement by the federal government indicating that it intends to take action with respect to "After Midnight," it is far from clear that any harm will occur—as a result of the distribution of "After Midnight"—in the future. *See Thomas*, 473 U.S. at 580–81, 105 S.Ct. at 3332–33 (finding a case not ripe for review when it depended upon "contingent future events that may not occur as anticipated, or indeed may not occur at all") (citation omitted).

Second, we also believe the factual record insufficiently developed at this stage in the proceedings to warrant judicial action. Obscenity determinations often require analysis of the particular factual contexts in which the material at issue is created, promoted, and disseminated. *See Ginzburg v. United States*, 383 U.S. 463, 470, 86 S.Ct. 942, 947, 16 L.Ed.2d 31 (1966) (noting that purveyor's emphasis on the sexually provocative aspects of materials "may be decisive in determination of obscenity"); *United States v. Battista*, 646 F.2d 237, 244–45 (6th Cir.), *cert. denied*, 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981). The facts surrounding Adult Video's

promotion and dissemination of "After Midnight" simply do not exist at this stage in the proceedings. These facts have yet to be developed because, of course, Adult Video has not promoted or disseminated "After Midnight" in the Western District of Tennessee. Accordingly, it would be impossible to make an accurate obscenity determination as to "After Midnight" at this time and further factual development is required.

Finally, withholding judicial relief does not result in undue hardship to Adult Video. It would, of course, alleviate Adult Video's concerns regarding the legality of its intended conduct if it obtained a determination as to whether "After Midnight" is obscene. Without this determination, Adult Video will be forced to weigh the risks and benefits of distributing the film in the Western District of Tennessee with its status as obscene or protected material uncertain. Nonetheless, the caution and uncertainty caused by withholding judicial relief at this time is not an "undue hardship." Individuals who choose to conduct their affairs along the boundaries of the criminal law will necessarily incur some risks concerning the legality of their conduct. *See Polykoff v. Collins*, 816 F.2d 1326, 1340 (9th Cir.1987). Any hesitation by Adult Video in distributing "After Midnight" is an inevitable by-product of the existence of anti-obscenity laws. *Fort Wayne Books, Inc.*, 489 U.S. at 60, 109 S.Ct. at 925. The hardship to Adult Video that arises from our withholding relief in this declaratory judgment action arises, not from this Court's inaction but rather from Adult Video's wish to distribute a film bordering on the line between protected First Amendment and obscene material.

To conclude, we agree with the district court that Adult Video does not have standing to seek a declaratory judgment on whether "After Midnight" is obscene or protected First Amendment material. In addition, we hold that—even if Adult Video had standing to pursue its claim—the issues presented are not ripe for adjudication.

Accordingly, we AFFIRM the district court's dismissal of the complaint.