**COLUMBUS COMMUNITY CABLE ACCESS, INC., dba ACTV 21, Plaintiff,**

v.

**Howard LUKEN, Defendant.**

No. C2–95–547.

United States District Court, S.D. Ohio, Eastern Division.

April 30, 1996.

Joseph S. Streb, Columbus, Ohio, for Plaintiffs.

W. Jeffrey Moore and Jud R. Mauger, Moore, Colley, Yaklevich & Williams, Columbus, Ohio, for Defendants.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201. Plaintiff Columbus Community Cable Access, Inc. is a non-profit corporation which manages a channel and facilities for community access to the cable television systems which service the City of Columbus. Plaintiff does so pursuant to a contract with the City of Columbus, a "franchising authority" within the

meaning of 47 U.S.C. § 552(9). Plaintiff alleges that under its contract with the City, it is required to implement regulations pursuant to Columbus City Code § 595.05 prohibiting the cablecasting of materials which are obscene under federal, state or local law. Plaintiff asserts that it has promulgated such regulations. Plaintiff further contends that it is authorized under federal law to refuse to cablecast obscene materials, and that plaintiff can incur civil and criminal liability if it permits the broadcasting of obscene materials.

Plaintiff further alleges that defendant Howard Luken is an independent producer of audio-video materials. Upon submitting videos to plaintiff for airing on the community access channel, defendant allegedly signed an agreement which included a prohibition against obscene materials. Defendant allegedly submitted two videos which, in plaintiff's opinion, are obscene. Plaintiff requests this court to determine that these videos are obscene and that plaintiff is authorized under the Cable Television Consumer Protection and Competition Act of 1992, the Columbus City Code and its own regulations to refuse to broadcast these programs, and further to suspend defendant from the use of its facilities.

Defendant, acting *pro se,* filed a brief motion to dismiss the complaint on August 29, 1995. Defendant argues in this motion that plaintiff has no editorial control over programming, that the internal dispute mechanisms provided by plaintiff's regulations have not been exhausted, and that plaintiff lacks standing because only the franchising authority can pursue this action. Plaintiff filed a memorandum in opposition to defendant's motion, moved for the conversion of the motion into one for summary judgment, and submitted additional evidentiary materials.

The court now has before it a record which includes almost eleven months worth of filings, most of them submitted by the plaintiff. Defendant's arguments that this action should be dismissed because plaintiff lacks standing to bring it and because other remedies have not been exhausted raise an issue touched upon in this court's order of June 6, 1995 denying plaintiff's motion for a temporary restraining order, namely, whether or not an actual case or controversy exists between plaintiff and defendant. It is appropriate at this point to address whether this action involves matters which are currently amenable to resolution in declaratory judgment proceedings.

The Declaratory Judgment Act provides federal courts with the authority to declare the rights and other legal relations of any interested party in a case of actual controversy. 28 U.S.C. § 2201(a). The "case or controversy" jurisdictional requirement of Article III of the United States Constitution applies to declaratory judgment actions. *Kelley v. E.I. DuPont de Nemours & Co.,* 17 F.3d 836, 844 (6th Cir.1994). The issue is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Michigan State Chamber of Commerce v. Austin,* 788 F.2d 1178, 1181 (6th Cir.1986); *Detroit, Toledo & Ironton R. Co. v. Consolidated Rail Corp.,* 767 F.2d 274, 279 (6th Cir.1985). The requirements of Article III are not satisfied merely because a party requests a court of the United States to declare its legal rights. *Michigan v. Meese,* 853 F.2d 395, 397 (6th Cir.1988). If there is no case or controversy, this court lacks subject matter jurisdiction over these proceedings. *Id.*

One component of the Article III "case or controversy" requirement is that the plaintiff have standing. *Adult Video Ass'n v. United States Department of Justice,* 71 F.3d 563 (6th Cir.1995). Standing requires: 1) that the plaintiff has suffered an injury in fact which is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that a causal connection exists between the injury and the conduct complained of; and 3) that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The party seeking a federal forum bears the burden of alleging facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct.

2197, 2215, 45 L.Ed.2d 343 (1975). The injury alleged by plaintiff is the prospect that defendant might file an action asserting a deprivation of his First Amendment rights if plaintiff refuses to cablecast his videos.

In *Adult Video*, 71 F.3d at 566, the court addressed the issue of whether plaintiff, a distributor of adult movies, faced actual or imminent injury in the form of criminal prosecution if it decided to distribute a video which might be obscene. The court concluded that "the mere fact that antiobscenity laws may work a chill on the distribution of constitutionally protected materials does not in itself confer standing upon a potentially aggrieved party." *Id.* The court went on to state that while criminal antiobscenity statutes "may induce self-censorship and some hesitation on those parties wishing to disseminate possibly obscene materials," this without more does not confer standing. *Id.* Plaintiff's situation here represents the flip side of the dilemma faced by the plaintiff in *Adult Video*. Here, plaintiff believes that the defendant's videos are obscene and that plaintiff may be subject to criminal prosecution if they are cablecast, yet plaintiff hesitates to refuse to cablecast them for fear that the videos might be found to contain material protected by the First Amendment. However, plaintiff must demonstrate more than a general fear of being sued for refusing to cablecast the videos. *See Id.*

Defendant has moved to dismiss this action, arguing that any action must be brought by the franchising authority, here, the City of Columbus. The federal statutes governing control over the nature of programs which may be broadcast over cable networks specify that a "cable operator" has no editorial control over programs, but that a "franchising authority" and a "cable operator" may specify in a franchising agreement that cable services will not be made available for the broadcast of obscene materials. 47 U.S.C. § 531(e), 544(d)(1). The gist of plaintiff's position is that it is not a cable operator or a franchising authority which can be held liable for programming decisions. Thus, regardless of whether federal law governs plaintiff's conduct, the pleadings suggest that defendant believes his quarrel is with the City of Columbus as the franchising authority or the cable operator, not the plaintiff.

Plaintiff at this point has not been sued by the defendant, nor is there any indication that such a suit is imminent. This action has been pending for almost a year, yet defendant has shown little interest in it, and has moved for a dismissal. He contends that administrative remedies have not been exhausted. Even though defendant, after five months of proceeding *pro se*, finally retained counsel who entered an appearance on October 30, 1995, counsel have not moved to supplement the brief motion to dismiss filed by defendant *pro se*. Defendant's response to this action does not suggest a desire to litigate. As in *Adult Video*, plaintiff does not attack the validity or constitutionality of the federal laws governing cablecasting or the applicable Columbus city ordinance. Plaintiff concedes that the issue of defendant's suspension from the use of its facilities has not been decided and does not arise to the level of a case or controversy. Plaintiff does not even allege in its complaint the nature of the injury it fears from the defendant or facts indicating that litigation by the defendant is imminent. *See Harris Trust & Savings Bank v. E–II Holdings, Inc.*, 926 F.2d 636, 640, n. 14 (7th Cir.1991) (complaint which fails to allege injury also fails to indicate standing). The record fails to reveal that the prospect of litigation by the defendant is anything other than conjectural, and plaintiff has not satisfied the first element of standing. Therefore, the court need not address the second and third elements.

The above circumstances are also relevant to the determination of whether this matter is ripe for review. *Adult Video*, 71 F.3d at 567. The ripeness doctrine requires not only the finding of a case or controversy, but also a discretionary determination by the court that a judicial decision would be desirable under all the circumstances. *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir.1985). The factors for determining ripeness include the likelihood that the harm alleged by plaintiffs will ever come to pass, whether the factual record is sufficiently developed to produce a fair adjudication of the parties' claims, and the hardship to the parties if

judicial relief is denied at this stage of the proceedings. *Adult Video,* 71 F.3d at 568.

▉ As discussed above, the circumstances here do not establish that the prospect of litigation being filed by the defendant is sufficiently real and immediate to establish a likelihood of future harm. The court is also not satisfied that the record is sufficiently developed to provide adequate review. As noted by the court in *Adult Video,* 71 F.3d at 568, "[o]bscenity determinations often require analysis of the particular factual contexts in which the material at issue is created, promoted and disseminated." Although a judicial determination of whether defendant's videos are obscene and whether plaintiff has the authority to decline to cablecast them would alleviate plaintiff's concerns regarding the legality of its future conduct, the caution and uncertainty caused by withholding judicial relief at this time is not an undue hardship. Any hardship here stems from plaintiff's desire to refuse to cablecast videos it believes to be obscene so as to avoid criminal prosecution, despite the possibility that defendant will later assert that the videos contained protected material, not from the lack of a judicial determination. *Compare Adult Video,* 71 F.3d at 568 (requiring distributor of adult materials to weigh the risks of criminal prosecution against the status of materials as potentially obscene or protected is not undue hardship; hardship arises not from judicial inaction but from desire to distribute film which borders on line between protected and obscene material). A judicial decision would not be desirable under these circumstances.

▉ The record before the court fails to show that an actual case or controversy exists between the parties or that this matter is ripe for review. In the absence of a case or controversy, plaintiff's action for declaratory judgment is no more than a request for an advisory opinion which this court is not authorized to render. *See Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Plaintiff in essence wishes this court to assume the responsibility of deciding whether the videos are obscene and whether plaintiff has the authority to refuse to show them. However, the Declaratory Judgment Act "was never intended as a device for relegating to the courts responsibilities reposed initially in private parties." *Harris Trust,* 926 F.2d at 640, n. 14 (quoting *Fitzgerald v. McChesney,* 336 F.2d 905, 910 (D.C.Cir.1964)). As the court in *Harris Trust,* a declaratory judgment action brought by trustees of high-yield investment securities, aptly stated, *Id.* at 641, in discussing the lack of a case or controversy,

> [T]he requirements of Article III are not met when parties merely allege, as the Trustees have effectively done here, that they are " 'at a loss to know what course to pursue.' " In our view, the vision of trustees without judicial guidance, however unpleasant, is eclipsed by a more disturbing vision—trustee after trustee (as well as those in analogous positions) coming into federal court and pleading, "We do not know what to do, Judge. Give us some instruction." (footnotes omitted).

This court finds the prospect of cable operators, franchising authorities and other related entities seeking judicial confirmation of the obscene or protected nature of every video submitted for cablecasting to be equally daunting. In the absence of a "sufficient[ly] immedia[te] and real" potential for injury, *Detroit, Toledo & Ironton R.,* 767 F.2d at 279, this court is not authorized to make such a determination. Since plaintiff has failed to show the existence of an actual controversy or of an actual or imminent injury, this court lacks subject matter jurisdiction over this action.

▉ It is also well settled that the exercise of jurisdiction to grant a declaratory judgment is discretionary. *Aetna Cas. & Sur. Co. v. Sunshine Corp.,* 74 F.3d 685, 687 (6th Cir.1996). The general tests applied in determining whether to exercise jurisdiction in a declaratory judgment action are whether the judgment "will serve a useful purpose in clarifying and settling the legal relationships in issue" and whether it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk Western R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984). The court in *Grand Trunk, Id.,*

set forth the following factors to be considered:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

The first two factors weigh against the exercise of declaratory judgment jurisdiction. While a declaratory judgment might resolve any controversy between plaintiff and defendant and clarify their legal relations to some extent, it may not resolve the entire controversy. Plaintiff seeks to adjudicate its rights under federal statutes which refer to franchise authorities and cable operators but denies that it falls under either of these categories. The other entities involved in the cablecast process, including the franchising authority and the cable operator, may be necessary parties to a complete adjudication of the rights and potential liabilities involved in this situation. They are not parties in this case and would not be bound by a judgment. Proceeding to a declaratory judgment in their absence could result in plaintiff or defendant having to pursue piecemeal litigation, and may prejudice the interests of the absent parties and their ability to litigate their rights and obligations under the federal cable laws in relation to those of the named parties.

The third factor, use of the declaratory judgment remedy for procedural fencing, is also implicated here. There is no evidence that defendant ever threatened plaintiff with legal action prior to the filing of this case. As noted previously, the record suggests that defendant does not view plaintiff as being a party to any disagreement he has concerning his videos, and that he does not feel that this matter is ripe for litigation. The defendant has not indicated on what legal theory he would proceed in the event that he decided at some point to bring action against the plaintiff. If defendant opted to file a civil rights action under 42 U.S.C. § 1983, Ohio courts could also provide a forum. Since the federal statutory provisions concerning cablecasting were intended in large part to protect the public from the showing of obscene materials on cable networks, a significant and as yet unbriefed legal issue exists as to whether defendant would be afforded a private right of action and a federal or state forum under those federal statutes. Plaintiff's precipitant rush to file this action, dragging along an unwilling defendant, has impacted negatively upon defendant's ability to choose his own legal theories and his own forum. It would be inequitable under these circumstances to allow plaintiff to use the declaratory judgment mechanism in an attempt to gain some tactical advantages or to force defendant to litigate a dispute which he feels is not ripe for resolution.

Courts have been hesitant in exercising discretion to award declaratory relief in regard to nonliability where the plaintiff has engaged in forum shopping in anticipation of possible state court actions, thereby compelling potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tort-feasor. *See Odeco Oil & Gas Co., Drilling Div. v. Bonnette,* 4 F.3d 401, 404 (5th Cir.1993); *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1167 (7th Cir.1969). In deciding whether to entertain a declaratory judgment action, a district court may consider the inequity of permitting a declaratory judgment plaintiff to gain precedence in time and forum by filing an anticipatory action. *State Farm Fire & Cas. Co. v. Taylor,* 118 F.R.D. 426, 430 (M.D.N.C. 1988). As the court in *Taylor* noted, *Id.* at 431:

> The declaratory remedy is *not a tactical device* whereby a party who would be a defendant in a coercive action may choose to be the plaintiff if he can beat the other party to the courthouse. A contrary view would promote a disorderly race to the courthouse. It would create an environment in which parties to disputes would

feel the urgency to file a lawsuit lest they lose a tactical advantage. Such an environment would discourage the *prelitigation* settlement of disputes and thus *prejudice* judicial economy. (Emphasis in the original).

This action involves in many respects the disorderly race to the courthouse referred to above. The reluctant defendant before the court has not only been deprived of his choice of time and forum, but he has also shown very little interest in the case. The plaintiff has engaged in so much speculation over what the defendant's legal position really is or might be that plaintiff has offered contradictory statements in its pleadings concerning its own position. Plaintiff's forum shopping has resulted in the filing of an action which is solely of plaintiff's design, and which presents this court with a one-sided picture of some issues and omissions as to other issues.

The fourth and fifth factors mandate inquiry into whether declaratory relief would result in encroachment upon state jurisdiction and whether a better or more effective alternative remedy is available. The First Amendment obscenity issues and the interpretation of federal regulatory statutes present matters of federal concern. However, according to plaintiff, any action filed by defendant may involve the application of state contract law principles to the various contracts between plaintiff and defendant and between plaintiff and the City of Columbus. The interpretation of Columbus City Code § 595.05 may also be necessary depending upon the issues raised by defendant. These are matters of local concern.

Friction may well result from this court's proceeding to judgment because the City of Columbus is not a party to this action. Although the City would not be bound by any judgment entered in this case, it could strain federal-state relations for this court to address issues in the City's absence which may be relevant to rights and liabilities of the City, particularly if plaintiff later attempted to urge the City to adhere to the terms of a favorable declaration rendered by this court. If defendant is allowed to select his own legal theories and proceed in the forum of his choice, he will have the opportunity to join any necessary parties in his action and proceed in a manner which will permit the resolution of all controversies in a single dispute.

In conclusion, the court finds that this action does not present a case or controversy which is ripe for review. However, even assuming that it does present an actual controversy, this court would still exercise its discretion in favor of declining to assume jurisdiction. This speculative action is not an appropriate vehicle for deciding complicated issues of constitutional magnitude or questions of federal statutory interpretation of first impression. The court concludes that the above factors, weighed together, tip the balance against the exercise of jurisdiction in this case.

Based upon the foregoing, the court finds that dismissal of this action is warranted. This action is hereby dismissed without prejudice.

It is so ORDERED.