**THE UNITED STATES of America and Michael Cox, Attorney General for the State of Michigan, Ex rel Michigan Natural Resources Commission, and Director of the Michigan Department of Natural Resources, Plaintiffs,**

v.

**WAYNE COUNTY, MICHIGAN; City of Allen Park; City of Belleville; Township of Brownstown; City of Dearborn Heights; City of Ecorse; City of Lincoln Park; City of River Rouge; City of Riverview; City of Romulus; City of Southgate; City of Taylor;**

Township of Van Buren; City of Wyandotte; Southgate–Wyandotte Relief Drain Drainage District; and Ecorse Creek Pollution Abatement Drain, No. 1 Drainage District, Defendants.

No. 87 70992.

United States District Court, E.D. Michigan, Southern Division.

Sept. 2, 2003.

Annette Lang, Environmental Enforcement Division, U.S. Dept. of Justice, Washington, DC, Pam Stevenson, Natural Resources Division, Lansing, MI, for plaintiffs.

Timothy S. Ferrand, Roseville, MI, Eric E. Reed, Detroit, MI, Stephen J. Hitchcock, Troy, MI, Kenneth D. Kruse, Allen Park, MI, Wallace G. Long, Bloomfield Hills, MI, Edward Zelenak, Lincoln Park, MI, William Look, Wyandotte, MI, Beth S. Gotthelf, Bloomfield Hills, MI, Kerry Morgan, Wyandotte, MI, John E. McSorley, Detroit, MI, William J. DeBiasi, Jr., Taylor, MI, Randall A. Pentiuk, Wyandotte, MI, Lavonda Jackson, Wayne County, Department of Environment, Detroit, MI, Patrick B. McCauley, Southfield, MI, David A. Bower, River Rouge, MI, for defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

## I. INTRODUCTION

City of Riverview, defendant in case 87–70992 and party to a consent judgment

which I approved and over which I have oversight responsibility, brings a Motion to Clarify this Court's Order of May 5, 2003 defining the role of the Southeast Michigan Consortium for Water Quality. For the reasons that follow, City of Riverview's Motion to Clarify is dismissed.

## II. FACTUAL BACKGROUND

On May 5, 2003, pursuant to this Court's ongoing oversight authority of regional water quality problems under consent judgments in cases 77–71100 (*US v. City of Detroit,* concerning the Detroit Water and Sewage Department) and 87–70992 (*US v. Wayne County,* concerning the Downriver communities—referred to in the caption of this matter), I ordered the Southeast Michigan Consortium for Water Quality, a voluntary organization composed of civic and governmental leaders, to "become an integral means in assisting the Court in the solution of regional water quality problems." *US v. Michigan,* 261 F.Supp.2d 906 (E.D.Mich.2003).

I issued the order defining the role of the Consortium after Governor Granholm publicly [1] requested that any future problems related to the Detroit Water and Sewage System—not specifically addressed by existing consent judgments— be brought to the Consortium to facilitate the development of "a regional consensus on efficient operation and management of the [Detroit Water and Sewer] system." (Letter from Governor Granholm to Judge Feikens of 4/10/03 referencing her veto message of Senate Bill 195).

The purpose of the consent judgments in both cases is to continue to improve the water quality of Southeast Michigan in order to ensure full compliance with federal standards under the Clean Water Act. The order of May 5, 2003 reflects this Court's finding that the purpose of the consent judgments, to ensure full compliance with federal standards, will be furthered by the voluntary resolution of regional water quality problems in Southeast Michigan.

Importantly, the order did not alter the existing consent judgments in either case 77–71100 nor case 87–70992 (to which Riverview is a party). The '87 consent judgment and its amendments (concerning case no. 87–70992) apply to a discrete area of Southeast Michigan, principally located in Western Wayne County, which is composed of twelve communities and two drainage districts. Riverview is one of these communities. The goals of the '87 consent judgment and its amendments required numerous renovations and corrections to the waste-water transportation system and to the Wyandotte Treatment Plant, none of which were affected by this Court's order of May, 5, 2003 addressed to the resolution of broader regional water quality problems.

In response to this Court's order of May 5, 2003 defining the role of the Consortium, Riverview brings a Motion to Clarify this Court's order in which numerous questions are raised and which this Court is requested to answer.

## III. ANALYSIS

### A. Standing

Article III of the United States Constitution limits the jurisdiction of federal

---

**1.** In her veto message of Senate Bill 195, Governor Granholm identified the consortium as an existing mechanism capable of serving as a voluntary problem-solving body. (Letter from Granholm to the Michigan State Senate of 3/21/03). In my May 5, 2003 order, I confirmed that the Consortium was an appro-priate mechanism to address problems related to Detroit's water and sewage system, and formally recognized that any solutions achieved on a voluntary basis, precluding a need for litigation, would assist the Court in its broader effort to oversee regional water quality issues in the region.

courts to justiciable "cases and controversies" identified by the doctrine of standing. *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). *See also Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To satisfy the constitutional requirements of Article III standing, a plaintiff must establish three elements: "(1) that the plaintiff [has] suffered an 'injury in fact'—an invasion of a judicially cognizable interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of— the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bennett*, 520 U.S. 154 at 167, 117 S.Ct. 1154 (1997) (citing *Lujan*, 504 U.S. 555 at 560–561, 112 S.Ct. 2130 (1992)).

## 1. Injury–in–Fact Test of Article III Standing Requires Party Seeking Judicial Review to Allege Personal Injury

"To establish an Article III case or controversy, a litigant first must clearly demonstrate that he has suffered an 'injury in fact.'" *Whitmore*, 495 U.S. 149 at 155, 110 S.Ct. 1717 (1990). The Court has emphasized that the "injury in fact" test "requires more than an injury to a cognizable interest ... [it] requires that the party seeking review be himself among the injured". *Sierra Club v. Morton*, 405 U.S. 727, 734–735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). *See also Nike v. Kasky*, ⸺ U.S. ⸺, ⸺, 123 S.Ct. 2554, 2555, 156 L.Ed.2d 580 (2003) (dismissing writ of certiorari in part due to

lack of standing where complainant alleged " 'no harm or damages whatsoever regarding himself individually' ") (quoting Lodging of Petitioners 4–5, paragraph 8); *U.S. v. Hays*, 515 U.S. 737, 744, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (holding plaintiffs lacked standing because they had not suffered "individualized harm"); *Lujan*, 504 U.S. 555 at 564, 112 S.Ct. 2130 (1992) (holding plaintiffs lacked standing for failure to demonstrate "how damage to [endangered] species" constituted "actual or imminent" injury to plaintiffs).

## 2. City of Riverview Has Failed to Allege Personal Injury as a Result of the Order Defining the Role of the Consortium

■ City of Riverview alleges no personal "injury in fact" as a result of this Court's order of May 5, and thus fails to satisfy the constitutional requirements of Article III standing necessary as a prerequisite for Riverview to challenge the judicial action in question. Riverview alleges no injury whatsoever, "concrete" or "particularized," "actual" or "imminent," that it has experienced or will experience as a result of this Court's order, as required by the law of standing. *See Bennett*, 520 U.S. 154 at 167, 117 S.Ct. 1154 (1997); *Hays*, 515 U.S. 737 at 744, 115 S.Ct. 2431 (1995); *Lujan*, 504 U.S. 555 at 559, 112 S.Ct. 2130 (1992); *Whitmore*, 495 U.S. 149 at 155, 110 S.Ct. 1717 (1990).

Like respondent in *Nike*, who the Court held lacked standing for failure to meet the injury-in-fact test, Riverview alleges "no harm or damages whatsoever regarding [it]self individually" as a result of this Court's action. *Nike*, 123 S.Ct. 2554 at 2555 (2003) (quoting Lodging of Petitioners 4–5, paragraph 8). Unlike petitioners in *Bennett*, who the Court held had standing based on their ability to allege a dis-

tinct negative impact—reduced water levels—flowing from the Biological Opinion they challenged, Riverview is unable to point to any such impact, either actual or imminent, resulting from this Court's order of May 5, 2003.

The order did not alter the terms of the consent judgment to which Riverview is a party (87–70992). The order simply recognized the beneficial role the Consortium may play in working to resolve regional water quality problems on a voluntary basis before they give rise to the need for further litigation or amendments to existing consent judgments. Only if the Consortium takes affirmative action to resolve a regional issue which results in a negative impact on Riverview's interests, might Riverview be able to demonstrate that it has suffered an "injury in fact" required by the doctrine of standing. In the event of such an occurrence, after proving an "injury in fact," Riverview could raise an appropriate challenge to a decision of the Consortium. However, at present, no such alleged "injury in fact" exists.

It is well settled that the "party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." *Lujan,* 504 U.S. 555 at 561, 112 S.Ct. 2130 (1992) (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In meeting its burden, the "litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements." *Whitmore,* 495 U.S. 149 at 155, 110 S.Ct. 1717 (1990). Riverview has failed to meet its burden to demonstrate that it has standing to challenge the action in question by failing to allege that it has suffered any "injury in fact." As a result, because Riverview has failed to meet the "immutable" requirements of Article III standing, *Bennett,* 520 U.S. 154 at 162, 117 S.Ct. 1154 (1997), Riverview may not in-

voke this Court's jurisdiction to hear its Motion.

**B. Ripeness**

Another ground upon which dismissal of plaintiff's motion is mandated is ripeness. "The ripeness doctrine exists to ensure that courts decide 'only existing, substantial controversies, not hypothetical questions or possibilities.'" *Dixie Fuel Co. v. Comm'r of Social Security,* 171 F.3d 1052, 1057 (6th Cir.1999) (quoting *City Communications Inc. v. City of Detroit,* 888 F.2d 1081, 1089 (6th Cir.1989)). In determining whether a claim is ripe, the Sixth Circuit has considered the following factors: "(1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Norton v. Ashcroft,* 298 F.3d 547, 554 (6th Cir.2002) (citing *Adult Video Ass'n v. US,* 71 F.3d 563, 568 (6th Cir.1995)). *See also National Park Hospitality Assoc. v. Dept. of the Interior,* —— U.S. ——, ——, 123 S.Ct. 2026, 2030, 155 L.Ed.2d 1017 (2003); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (*rev'd on other grounds, Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

█ In accordance with these guidelines, Riverview's Motion to Clarify must fail for lack of ripeness. First, as discussed above, Riverview fails to allege any concrete harm that it has experienced or will experience as a result of this Court's order of May 5, 2003. Riverview alleges no "impact," as a result of this Court's recognition of the Consortium as an appropriate mechanism for voluntary resolution of regional water quality issues, that is "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Laborato-*

*ries,* 387 U.S. 136 at 152, 87 S.Ct. 1507 (1967).

Second, Riverview will experience no hardship as a result of this Court declining to entertain its Motion to Clarify at the present time. As in *Toilet Goods,* where the Court held unripe a challenge to a regulation by the Food and Drug Administration, "no irremediable adverse consequences [will] flow from requiring a later challenge." *Toilet Goods Assoc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). *See also Nat'l Park Hospitality Assoc. v. Dept. of Interior,* —— U.S. ——, 123 S.Ct. 2026, 2031–2032, 155 L.Ed.2d 1017 (2003) (holding petitioner had "failed to demonstrate that deferring judicial review [would] result in real hardship" where concessioners suffered "no practical harm" as a result of the challenged regulation). In the event the Consortium resolves an issue in a manner which impacts Riverview detrimentally, Riverview will at that time be able to adequately protect its interests by bringing suit in the context of a "concrete situation" unmarred by speculation and abstraction. *Toilet Goods,* 387 U.S. 158 at 165, 87 S.Ct. 1520.

Third, at this time Riverview's concerns are not fit for judicial review. Unlike *Thomas v. Union Carbide Agricultural Products Co.,* which held the issue before the Court ripe for adjudication where "nothing would be gained by postponing a decision," there is no question that the present matter will be "clarified by further factual development." *Thomas,* 473 U.S. 568 at 581–582, 105 S.Ct. 3325 (1985). *See also Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 82, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (holding the case ripe for adjudication where the Court would be in "no better position later" to decide the question). Here, further factual development would reveal whether the Consortium will take action impacting Riverview, and whether that impact will be negative and of a type Riverview will seek to challenge. At present, however, Riverview's concerns of future harm arising from actions of the Consortium are merely speculative, and not fleshed out by concrete facts.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Clarify the Order of May 5, 2003 is DISMISSED.

**IT IS SO ORDERED.**