**KENTUCKY PRESS ASSOCIATION, INC., Plaintiff,**

v.

**COMMONWEALTH OF KENTUCKY, et al., Defendants.**

No. CIV.A.3:04CV42–JMH.

United States District Court, E.D. Kentucky, Frankfort.

Feb. 1, 2005.

Jeremy Stuart Rogers, Dinsmore & Shohl, LLP, Jon L. Fleischaker, Dinsmore & Shohl, R. Kenyon Meyer, Dinsmore & Shohl, Louisville, KY, for Kentucky Press Association, Inc., Plaintiff.

D. Brent Irvin, Office of the Attorney General, Frankfort, KY, for Commonwealth of Kentucky, Janice Marshall, in her official capacity as the Clerk of the Franklin Circuit Court and The Franklin District Court and on behalf of all other similarly situated, Eleanore Garber, in her official capacity as Family Court Judge and on behalf of all others similarly situated, Deborah Deweese, in her official capacity as District Judge and on behalf of all others similary situated, Defendants.

Gail Robinson, Public Advocate's Office, Timothy G. Arnold, Frankfort, KY, for Unnamed Juveniles 1–13, On Behalf of Themselves and Others Similarly Situated, Movant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on Defendants' motion to dismiss or certify [Record No. 5 & 6] to which Plaintiff responded [Record No. 9] and Defendants replied [Record No. 13]. The defendants have also filed a motion to dismiss the plaintiff's amended complaint [Record No. 15]. The plaintiff responded [Record No. 23] and the defendants replied [Record No. 26]. Subsequently, the plaintiff filed a motion for leave to file a supplemental response to the defendants' motion to dismiss [Record No. 33].

### I. Procedural Background

On July 15, 2004, Plaintiff, Kentucky Press Association, Inc. ("KPA"), filed a complaint against Defendants, the Commonwealth of Kentucky and Janice Marshall in her official capacity as Clerk of the Franklin District and Circuit Courts. The complaint alleged that various sections of Kentucky's Uniform Juvenile Code ("KUJC") violated the First Amendment of the United States Constitution and the Kentucky Constitution's right of access because the statutes closed juvenile proceedings and records to the public.

The KUJC provides that "[t]he general public shall be excluded" from juvenile court proceedings unless the judge finds the party seeking admittance has "a direct interest in the case or in the work of the court." KRS § 610.070(3). As for records, the KUJC provides that "[a]ll law enforcement and court records regarding [juveniles] shall not be opened to scrutiny by the public" except certain records concerning juveniles found delinquent for an offense that would be a capital offense or a felony. KRS § 610.320(3). Further, "[t]he court shall order sealed all records" if the juvenile is not convicted of a felony. KRS § 610.330(3). "[A]ll juvenile court records ... shall be deemed to be confidential and shall not be disclosed except to the child, parent, victims, or other persons authorized to attend a juvenile court hearing ... unless ordered by the court for good cause." KRS § 610.340(1)(a).

On August 20, 2004, the defendants filed a motion to dismiss the complaint or in the alternative to certify state law issues to the Kentucky Supreme Court and to abstain on all the remaining issues. Immediately thereafter, on September 3, 2004, the plaintiff filed a motion for leave to file an amended complaint and on the same day responded to the defendants' motion to dismiss. On September 13, 2004, the Court granted the plaintiff's motion for leave to file an amended complaint, as it was clear to the Court that pursuant to Federal Rule of Civil Procedure ("Rule") 15, the plaintiff could amend the pleading once as a matter of course because the defendants had not yet filed a responsive pleading.

The amended complaint no longer named the Commonwealth of Kentucky as a party, added Eleanore Garber in her official capacity as a Family Court Judge and on behalf of all others similarly situated, changed Janice Marshall to include all others similarly situated, added Deborah Deweese in her official capacity as District Judge and on behalf of others similarly situated, and made more specific allegations about members of KPA seeking and being denied access to juvenile proceedings and records.

On the same day the Court filed its Order granting leave to file an amended complaint, the defendants filed a response to the motion to file an amended complaint that also functioned as a reply to its motion to dismiss the original complaint.

## II. Motion to Dismiss the Original Complaint [Record Nos. 5 & 6]

Defendants argue in the reply to the motion to dismiss the original complaint that while the amended complaint cured many of the defects of the original complaint, the amended complaint should still be dismissed because it did not cure the issues of standing or abstention. The plaintiff, on the other hand, argues that the amended complaint rendered the defendants' motion to dismiss the original complaint moot. The Court agrees.

■ Plaintiff's amended complaint supercedes the original complaint, thus making the motion to dismiss the original complaint moot. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (holding that the amended complaint supersedes all previous complaints and becomes the operative pleading). Further, the defendants' request to dismiss the amended complaint in the reply to the motion to dismiss the original complaint is not in the form of a motion, in which case the Court may not grant said relief. L.R. 7.1(a).

The defendants subsequently filed a motion to dismiss the amended complaint, which the Court discusses below. In evaluating the motion to dismiss the amended complaint, the Court only considers those arguments in the first motion to dismiss that are specifically incorporated or referred to in the defendants' motion to dismiss the amended complaint.

## III. Defendants' Motion to Dismiss the Amended Complaint [Record No. 15]

Defendants argue the Court should dismiss the amended complaint for several reasons. First, the defendants argue that the Court does not have jurisdiction because the plaintiff lacks standing and due to sovereign immunity. The defendants also argue that the Court should abstain and certify questions to state court, or use the Court's discretion to withhold equitable relief. If the Court does have jurisdiction over the matter, the defendants argue that the plaintiff's complaint fails to state a claim because the complaint asserts a "facial" as opposed to an "as applied" challenge.

## 1. Jurisdiction Arguments

The defendant makes several arguments that the Court should dismiss for lack of jurisdiction. The defendants argue that: the Court does not have jurisdiction because the plaintiff does not have standing; the case is not ripe; the doctrine of sovereign immunity applies; and, the Court should abstain and certify questions to the Kentucky Supreme Court.

The defendants did not specify if the jurisdictional arguments were made pursuant to Rule 12(b)(6) or 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004) (analyzing abstention, ripeness, and sovereign immunity pursuant to Rule 12(b)(1)). The defendants' motion to dismiss attacked the Court's subject matter jurisdiction on the face of the plaintiff's complaint, and therefore, in order to determine whether the Court has jurisdiction, the Court will assume as true the plaintiff's allegations.

### A. Standing

Article III, § Section of the United States Constitution provides that federal courts shall only have jurisdiction over cases and controversies. If the plaintiff does not have standing to sue, then the Court does not have jurisdiction over the matter because there is no "case" or "controversy". *Kardules v. City of Columbus,* 95 F.3d 1335, 1346 (6th Cir.1996). There are constitutional requirements for standing, as mandated by Article III, and there are prudential considerations which are "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove*

*Unified Sch. Dist. v. Newdow,* 542 U.S. ——, 124 S.Ct. 2301, 2308, 159 L.Ed.2d 98 (2004). In order for the plaintiff to establish the requirements for Article III standing to sue, the plaintiff must show:

(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Ailor v. City of Maynardville,* 368 F.3d 587, 596 (6th Cir.2004).

The defendants assert that the plaintiff's complaint should be dismissed because it presents generalized examples of unidentified members' attempts to gain access to unidentified court proceedings and court records. They argue that the complaint does not state whether the members or the association sought to intervene in accordance with the KUJC procedures for gaining access to proceedings or records, which is another way of framing their argument that the plaintiff should have brought an "as applied" challenge. Further, the defendants argue that the complaint does not link any of the named judges or the clerk to the denial of access. (Defs.' Mot. to Dismiss, Abstain, or Certify Am. Compl. at 6.)

■ The Court finds that the plaintiff's complaint sufficiently alleges Article III standing to sue on its own behalf and on the behalf of its members.

First, the plaintiff has sufficiently alleged an injury in fact that is concrete and particularized and actual or imminent. KPA alleges that "[m]embers of KPA ... routinely exercise their First Amendment

rights to gather and publish news, and frequently report on state court proceedings throughout Kentucky." It alleges further that "KPA, its members, the press and the public ... are precluded by statute from seeking or obtaining access to certain juvenile court proceedings and records." (Pl.'s Am. Compl. at 3.) The complaint then goes on to mention specific examples, albeit vague, of the following: 1) a member of KPA attempted to attend a juvenile court proceeding and was denied access by a bailiff; 2) a member of KPA attempted to confirm the identities of juveniles arrested for drugs at a local high school and was denied access to court records by the circuit and district clerks; and 3) members of KPA sought access to court files of juveniles charged with rape and murder and were denied access by the district and circuit clerk's office. (*Id.* at 8.) Plaintiff's alleged injury is in being denied right of access to court proceedings and records, which it asserts is a violation of its First Amendment rights. An asserted constitutional violation is certainly a sufficient injury which is concrete and imminent.

The plaintiff has also sufficiently alleged that the injury (the alleged constitutional violation) is "fairly traceable" to the defendants' conduct. The defendants argue, and it is well noted, that the plaintiff's allegations are not connected to the named defendants. However, the plaintiff sued the named defendants as a class of all similarly situated judges and clerks. (*Id.* at 3.) Due to this fact, the plaintiff has sufficiently alleged that the injury is "fairly traceable" to the defendants' behavior.

Finally, the Court finds that it is apparent that if the Court grants the plaintiff's requested relief (a declaratory judgment and injunction prohibiting enforcement of the closure proceedings), the plaintiff's alleged constitutional violation of right of access to court proceedings and records would likely be redressed.

Because KPA is an organization, there are specific considerations as to whether KPA can sue on behalf of its members.[1] An association or organization has standing to sue on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181, 120 S.Ct. 693 (*citing Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The Court finds that the plaintiff's complaint adequately alleges each of the *Hunt* requirements for associational standing.

The first requirement, the member's ability to satisfy standing individually, is shown by the specific examples mentioned in the plaintiff's complaint and the fact that the complaint states that KPA is a press association whose members "routinely exercise their First Amendment rights to gather and publish news, and frequently report on state court proceedings throughout Kentucky." (Pl.'s Am. Compl. at 3.)

Second, the *Hunt* test requires that the interests at stake in the organization's claim must be germane to the organization's purpose. This requirement is met because the plaintiff's members are reporters who allegedly have been denied their First Amendment right of access to court proceedings and records. (*Id.*) The complaint states that its members seek access

---

1. It is important to note that KPA sues on behalf of its members and on behalf of the organization itself. (Pl.'s Am. Compl. at 3.)

to court records and proceedings in the course of their reporting. (*Id.* at 2–3.) Thus, the interests the plaintiff seeks are germane to the organization's purpose which is "promoting the interests of its members." (*Id.* at 2.)

Third, the *Hunt* test mandates that neither the claim asserted, nor the relief requested, require personal participation of the members. Because the plaintiff is asserting a facial challenge to the KUJC closure provisions, it is not necessary for the members of KPA to personally participate in the case. Thus, participation of the plaintiff's members is not needed.

Therefore, the plaintiff has shown that it has sufficiently alleged standing for itself and on behalf of its members and, as such, the Court may not dismiss the complaint for lack of standing.

### B. Prudential Considerations for Standing

The Supreme Court has "explained that prudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove*, —— U.S. at ——, 124 S.Ct. at 2309 (*quoting Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

The defendants state that the plaintiff's complaint violates "the general prohibition on a litigant's raising another person's legal rights" because the complaint brings a facial challenge on behalf of the plaintiff's members.

■ The Court determines whether it is permissible for the plaintiff to bring a suit raising another party's legal rights by looking at "the relationship of the litigant to the person whose rights are being as-

serted; the ability of the person to advance his own rights; and the impact of the litigation on third-party interests." *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 n. 3, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

In the case at hand, the complaint asserts the rights of the members of KPA and KPA itself. (Pl.'s Am. Compl. at 3.) Thus, any prudential argument concerning the general prohibition against asserting the rights of third-parties only applies to the portion of the complaint asserting the rights of the members of KPA.

Using the factors enunciated in *Caplin & Drysdale*, the plaintiff's complaint does not offend the general prohibition against asserting the rights of third-parties. For instance, KPA and its members are closely related in that both the organization and its members seek to access information relating to court proceedings and records. (*Id.*) Furthermore, the plaintiff states that the complaint asserts a facial challenge because of the alleged inability to bring an as applied challenge. The plaintiff argues that the KUJC's closure provisions make it impossible to seek access by showing a "direct interest" in a juvenile proceedings or "good cause" to obtain juvenile records because the reporters can not learn enough about a particular case to prove either a "direct interest" or "good cause". Finally, the impact on the members' interest in the suit would not be negative, but on the contrary, would advance the members' interests.

### C. Ripeness of Claim

■ Article III's requirement that federal courts only hear "cases or controversies" includes the requirement that the claim must be "ripe". Ripeness, while related to the issue of standing, is a distinct inquiry that involves determining whether there is a substantial controversy between

parties who have adverse legal interests. *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union v. Airborne, Inc.,* 332 F.3d 983, 987 (6th Cir.2003) (*quoting Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972)). "Determining whether a claim is ripe involves evaluating 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* at 988 (*quoting Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

■ Using the standard just mentioned, the Court finds the plaintiff's complaint presents a ripe controversy for decision. First, the issue is fit for decision because as the plaintiff presents a facial challenge to the closure provisions, there are no factual issues which must be developed in order for the Court to decide whether the provisions violate the plaintiff's right of access. Also, there would be hardship for the parties without decision because the plaintiff alleges that it can not attempt to seek access through the KUJC procedures due to the statutes' provisions on closure. As such, the plaintiff has presented a live controversy for decision. *Kardules,* 95 F.3d at 1344 (stating that the "Supreme Court typically has found hardship when enforcement of a statute or regulation is inevitable and the sole impediment to ripeness is simply a delay before the proceedings commence").

### D. Sovereign Immunity

The defendants argue that the complaint should be dismissed because the suit is barred by the application of sovereign immunity. (Defs.' Mot. to Dismiss, Abstain or Certify Am. Compl. at 13–18.) The defendants state that while *Ex Parte Young* permits suits against state officers for prospective injunctive relief, there are exceptions to the *Young* doctrine that apply in the case at hand. Specifically, the

defendants assert that the complaint does not allege that the particular defendants enforced the closure provisions. Further, the defendants argue that the Supreme Court created an exception to the *Young* doctrine in *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), wherein sovereign immunity bars suits against state officials in their official capacity when the relief sought is the functional equivalent of monetary relief and the relief implicates special sovereignty interests. *Id.* at 281, 117 S.Ct. 2028. The defendants arguments are without merit.

■ It has long been established that the doctrine of sovereign immunity does not bar prospective injunctive relief against state officials sued in their official capacity. *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Barton v. Summers,* 293 F.3d 944, 948 (6th Cir. 2002). There are exceptions to the *Young* doctrine, but none of the exceptions are applicable to this case.

First, the defendants argue that for *Young* to apply, the named defendants must be directly connected to the enforcement of the alleged unconstitutional statute. (Defs.' Mot. to Dismiss, Abstain or Certify Am. Compl. at 14.) This argument fails because the amended complaint alleges that the particular defendants enforce the allegedly unconstitutional provisions of the KUJC. (Pl.'s Am. Compl. at 3–4.)

■ Next, the defendants argue that the exception noted by the plurality in *Coeur d'Alene* should apply, barring the application of the *Young* doctrine. In *Coeur d'Alene,* the Supreme Court held that the *Young* doctrine does not apply to relief sought that implicates special sovereignty interests where such relief is the functional equivalent of that barred by the 11th

Amendment. *Coeur d'Alene*, 521 U.S. at 281, 117 S.Ct. 2028.

A "special sovereignty interest" has been defined as an interest that is core, essential or fundamental. *Bickford v. Lodestar Energy, Inc.*, 310 B.R. 70, 75 (E.D.Ky.2004). Examples of special sovereignty interests include suits akin to quiet title actions and suits seeking the federal court to allocate a state's funds in a particular manner. *Coeur d'Alene Tribe*, 521 U.S. at 281, 117 S.Ct. 2028; *Barton*, 293 F.3d at 951. The case at hand does not implicate the kinds of special sovereignty interests at issue in the aforementioned cases because it simply asks the Court to enjoin the defendants from enforcing an allegedly unconstitutional statute and does not seek property or allocation of funds from the state. If this case was found to implicate special sovereignty interest such that the *Young* doctrine would not apply, then the *Young* doctrine would cease to exist as an exception to the 11th Amendment.

### E. Abstention

The defendants argued in the motion to dismiss the original complaint that the Court should abstain decision and certify issues of state law to the Kentucky Supreme Court. (Defs.' Mot. to Dismiss, Abstain or Certify Am. Compl. at 20–25.) While there are no longer any state law claims in the amended complaint, the defendants renewed the abstention and certification arguments in the motion to dismiss

the amended complaint. (*Id.* at 18–22.) These arguments are without merit because none of the abstention principles apply to the case at hand.

For instance, *Younger* abstention is inapplicable because there is not a state proceeding that is currently pending. *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir.1998). Neither *Burford* or *Pullman* abstention are appropriate because there are no longer any state law issues, as the amended complaint omitted any state law claims and alleged only federal claims. *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660–61 (6th Cir.2002) (holding that *Burford* abstention applies when a case presents difficult questions of state law or federal jurisdiction would be disruptive of complex state regulatory scheme); *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir.1999) (holding that *Pullman* abstention is appropriate when uncertain issues of state law have to be resolved before the federal issue can be addressed). Here, because the plaintiff brought a facial challenge to the KUJC based solely on a federal right of access violation,[2] there are no unclear issues of state law that would make it appropriate for this Court to abstain.

Finally, there are no questions of state law to certify to the Kentucky Supreme Court because the defendants have not shown that the provisions at issue are unclear in the closure of juvenile proceedings and hearings. *Transamerica Ins. Co.*

---

**2.** Defendants argue repeatedly that the plaintiff should have brought an "as applied" versus a "facial" challenge to the KUJC. While the KUJC does provide a mechanism for intervention by showing a "direct interest" in the hearing or by showing "good cause" for the records, the plaintiff brings a facial challenge because it alleges that the mechanism itself prevents any possible intervention because it is impossible for the public or press to know enough facts about any juvenile case to intervene. The case at hand is thus distin-

guished from the general rule against facial challenges except in instances of First Amendment over breadth claims. *E.g. Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999); *Amelkin v. McClure*, 205 F.3d 293, 296 (6th Cir.2000). Instead, the plaintiff in this case argues that the statute is facially invalid because it can never be constitutionally applied to anyone, including the plaintiff, because the statutes' closure provisions make it impossible to intervene.

v. *Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir.1995) (stating that "[r]esort to the certification procedure is most appropriate when the question is new and state law is unsettled").. Because the statutes are clear and because there are no issues of state law to certify, the defendants' request to certify issues of state law is unfounded and the Court finds no authority to abstain from decision.

## 2. Dismissal for Failure to State a Claim

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. For purposes of a motion to dismiss, "[t]he Court must accept as true 'well-pleaded' facts set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir.2004); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir.2002). Construing the complaint in the light most favorable to the plaintiff, dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief." *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir.1996) (*quoting Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 353 (6th Cir. 1990)).

Assuming as true the allegations in Plaintiff's complaint, the Court finds that Plaintiff has failed to state a claim and the complaint must be dismissed.

The Supreme Court recognized a First Amendment right of access for criminal trials in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). The Court held that "the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'" *Id.* (internal citations omitted) (*quoting Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). The Court later articulated that the First Amendment affords a right of access to criminal trials for two main reasons. First, the criminal trial has historically been open to the public and the press. Second, "the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole." *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 605–06, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).

■■■ The *Richmond* test is now known as the "experience and logic" test. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir.2002). The first part of the test considers whether the particular proceeding and records "historically [have] been open to the press and general public." *United States v. Miami Univ.*, 294 F.3d 797, 823 (6th Cir.2002). If the proceedings have been historically open, then the question becomes whether public access would play a "'significant positive role in the functioning of the particular process in question.'" *Id.* at 823 (*quoting Press–Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986)).

■■■ The Supreme Court has never expanded the right of access to include civil trials, but the Sixth Circuit, using the "experience and logic" test, held that there is a First Amendment right of access to civil trials. *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir.1983). The court stated that civil trials have historically been open and policy considerations, like encouraging openness and placing a check on the judicial system, mandate that civil trials be accorded the same presumption of openness as criminal trials. *Id.* at 1178–79.

Neither the Supreme Court or the Sixth Circuit has extended the right of access to

juvenile proceedings. Thus, in order for the plaintiff to state a claim for a denial of right of access, the plaintiff must allege that both factors of the *Richmond* test mandate that the Court find the presumption of openness applies to juvenile proceedings and records. Plaintiff's complaint fails in this regard.

For instance, Plaintiff's complaint does not allege, nor can it allege, that juvenile proceedings or records have been historically open to the public. On the contrary, juvenile proceedings and records have been historically closed to the public. *See Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 107, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) (Rehnquist, C.J., concurring) (noting that "[i]t is a hallmark of our juvenile justice system in the United States that virtually from its inception at the end of the last century its proceedings have been conducted outside of the public's full gaze and the youths brought before our juvenile courts have been shielded from publicity"); *United States v. Three Juveniles*, 862 F.Supp. 651, 656–57 (discussing the long tradition of closed juvenile proceedings); *Natural Parents of J.B. v. Fla. Dep't of Children & Family Servs.*, 780 So.2d 6, 9 (Fla.2001) (stating that "juvenile proceedings have historically been closed to the public in furtherance of the overriding interest in, among other things, protecting the child from stigma, publicity, and embarrassment and promoting rehabilitation").

Consequently, the plaintiff has not and can not state a claim for denial of right of access. *See Miami Univ.*, 294 F.3d at 823 (holding that there is no First Amendment right of access for student university disciplinary records because these records and proceedings have been historically closed to the public).

Even if the plaintiff could allege that juvenile proceedings have been historically open to the public, the plaintiff can not allege that the second prong of the *Richmond* test is met. Rather than playing a "significant positive role in the functioning of" juvenile proceedings, opening juvenile proceedings would frustrate the purpose of juvenile court. The Kentucky Supreme Court has noted that the "purpose of the shroud of secrecy and confidentiality mandated [by the KUJC] is to protect the juvenile. Clearly this purpose was uppermost in the minds of the General Assembly." *F.T.P. v. Courier–Journal*, 774 S.W.2d 444, 446 (Ky.1989) (holding that the KUJC's closure provisions apply at the appellate level). The court recognized that "[i]t was intended that trials of juveniles not be publicized in the news media, as such publicity would possibly deprive the juvenile of a fair trial and, more particularly, would likely diminish his or her prospect for rehabilitation." *Id.* Because the plaintiff has not stated a cause of action for a right of access pursuant to the First Amendment, the complaint shall be dismissed.[3]

## IV. Plaintiff's Motion for Leave to File Supplemental Memoranda [Record No. 33]

After the plaintiff replied to the defendants' motion to dismiss the amended complaint, the plaintiff moved the Court for leave to file supplemental memoranda, arguing that new relevant authority should be considered by the Court. The case cited by the plaintiff, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004), held that the press had a qualified First Amendment right of access to inspect docket sheets. *Id.* at 95–96. The lower court did not decide the merits of

---

3. Because the Court holds that the plaintiff can not assert a claim for right of access to juvenile records or proceedings, it is unneces- sary for the Court to reach the defendants' argument for the Court to use its discretion to withhold declaratory relief.

the case, but instead held that the named defendants, the chief justice of the state supreme court and the chief administrator, did not have the authority to grant access because the dockets were sealed pursuant to prior court orders. *Id.* at 86. The Second Circuit held that if sealed administratively, then the named defendants had the authority to grant access. *Id.* at 97–99. The court also addressed the issue of abstention that was not reached below, holding that there were no compelling reasons to abstain. *Id.* at 99–102.

The plaintiff argues that this case should be considered by the Court in reaching its decision because the Second Circuit discusses abstention, standing, and whether the right to access states a claim for which relief may be granted. (Pl.'s Mot. to Supplement Pl.'s Mem. in Resp. to Defs.' Mot. to Dismiss 1–3.)

The Court denies the plaintiff's motion to supplement its response because the case was decided *prior* to the response time, but was not initially cited by the plaintiff. Further, the case is not relevant to the matter at hand because it does not concern juvenile proceedings in particular, but instead focuses on the across-the-board denial of access to docket sheets. *Hartford Courant*, 380 F.3d at 90–97. For the above mentioned reasons, the Court denies the plaintiff's motion to supplement its response.

## V. Conclusion

The Court finds that the plaintiff has standing, both to assert a right of access claim on its own behalf and on behalf of the members of KPA. The Court also finds that the principles of sovereign immunity and abstention are not applicable in this instance because there are no pending state court proceedings or complex state law issues.

Further, the Court finds that the plaintiff can not state a claim for denial of right of access pursuant to the *Richmond* test because juvenile records and proceedings have not been historically open to the press or the public. As such, Plaintiff can not survive a motion for dismissal and this case must be dismissed for failure to state a claim. Because the Court is dismissing the complaint for failure to state a claim, it is unnecessary for the Court to reach the defendants' argument concerning the Court's discretion to withhold equitable relief.

Accordingly, **IT IS ORDERED:**

(1) That Defendants' motion to dismiss or certify the original complaint [Record No. 5 & 6] be, and the same hereby is, **DENIED AS MOOT;**

(2) That Plaintiff's motion for leave to file supplemental memoranda to Defendants' motion to dismiss [Record No. 33] be, and the same hereby is, **DENIED;**

(3) That Defendants' motion to dismiss or certify the amended complaint [Record No. 15] be, and the same hereby is, **GRANTED,** and **DISMISSED WITH PREJUDICE;**

(4) That this matter be, and the same hereby is, **STRICKEN FROM THE ACTIVE DOCKET;** and

(5) That all pending motions be, and the same hereby are, **DENIED AS MOOT.**