*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KENTUCKY PRESS ASSOCIATION, INC.,
　　　　　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

COMMONWEALTH OF KENTUCKY,
　　　　　　　　　　　　*Defendant,*

JANICE MARSHALL, in her official capacity as the
Clerk of the Franklin Circuit Court and The Franklin
District Court and on behalf of all others similarly
situated; ELEANORE GARBER, in her official capacity
as Family Court Judge and on behalf of all others
similarly situated; DEBORAH DEWEESE, in her
official capacity as District Judge and on behalf of
all others similarly situated,
　　　　　　　　　　　　*Defendants-Appellees.*

No. 05-5224

> 

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 04-00042—Joseph M. Hood, Chief District Judge.

Argued: November 29, 2005

Decided and Filed: July 7, 2006

Before: NORRIS and BATCHELDER, Circuit Judges; RICE, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jon L. Fleischaker, DINSMORE & SHOHL, Louisville, Kentucky, for Appellant. D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees. **ON BRIEF:** Jon L. Fleischaker, R. Kenyon Meyer, Jeremy S. Rogers, DINSMORE & SHOHL, Louisville, Kentucky, for Appellant. D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees. Karen Quinn, Timothy G. Arnold, Gail Robinson, KENTUCKY DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Amici Curiae.

---

[*]The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

---------------

## OPINION

---------------

ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant Kentucky Press Association ("KPA"), a non-profit corporation whose members include newspapers throughout Kentucky, appeals the dismissal for failure to state a claim of its suit against Defendants-Appellants the Commonwealth of Kentucky and various Kentucky court officials (collectively, "the Commonwealth"), claiming violation of KPA's First Amendment right of access to court proceedings. Specifically, KPA makes a facial challenge to four Kentucky statutory provisions, claiming that they deny the media any access to Kentucky's juvenile court proceedings and records pertinent thereto. The district court rejected the Commonwealth's jurisdictional, abstention, and sovereign immunity arguments, but held that KPA's complaint did not state a claim for a First Amendment right of access to juvenile records and proceedings. Because KPA has not challenged the relevant statutes in the Kentucky courts, which could well render an interpretation of these statutes that provides for the access that KPA seeks and thus avoids the constitutional issue presented in this case, we will dismiss the appeal for failure to present a case or controversy sufficiently ripe for adjudication, and remand this case to the district court with instructions that it be dismissed on that ground.

## BACKGROUND

KPA filed suit in the district court, making a facial challenge to the constitutionality of four provisions of the Kentucky Uniform Juvenile Code ("KUJC"). K.R.S. § 610.070(3) provides that "[t]he general public shall be excluded" from juvenile hearings, and allows access only to the immediate families of parties before the court, victims and their families, witnesses, attorneys, certain government officials, and "such persons admitted as the judge shall find have a direct interest in the case or in the work of the court, and such other persons as agreed to by the child and his attorney." K.R.S. § 610.320(3) provides that the mental, medical, treatment, psychological, law enforcement, and court records of juveniles "shall not be opened to scrutiny by the public," with exceptions for law enforcement and court records regarding certain serious offenses. K.R.S. § 610.330 mandates that the juvenile court order that all records pertaining to the particular juvenile proceeding be sealed, provided the petitioning juvenile meets the relevant prerequisites for expungement. And finally, K.R.S. § 610.340 generally requires that all juvenile records remain confidential, allowing disclosure only to a limited class of individuals, including "persons authorized to attend a juvenile court hearing pursuant to K.R.S. 610.070," and in situations "ordered by the court for good cause." K.R.S. § 610.340(1)(a).

KPA maintained in the district court that these provisions, on their face, violate KPA's First Amendment right of access to judicial proceedings, as first established by the Supreme Court in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). The Commonwealth asked the district court to dismiss the case on several jurisdictional and prudential grounds, including standing, ripeness, sovereign immunity, and abstention. The main thrust of these arguments was that it would be improper for a federal court to pass upon the constitutionality of the Kentucky statutes at issue without knowing whether they actually operate to deny KPA the access it seeks. In other words, because KPA never petitioned the Kentucky courts for access to juvenile proceedings–for example, asserting a right of access under K.R.S. § 610.070(3) as a party with a "direct interest in the case or in the work of the court"–it would be premature for a federal court to assume that KPA's interpretation of the KUJC as denying all media access to juvenile proceedings was actually the law of Kentucky, and thus inappropriate for the federal court to make a constitutional ruling based upon that potentially erroneous assumption. The district court rejected these arguments. *See Ky. Press Ass'n, Inc. v. Commonwealth of Kentucky*, 355 F. Supp. 2d 853, 858-63 (E.D. Ky. 2005). As to the

Commonwealth's basic contention that KPA should have sought access through the Kentucky courts before mounting a facial attack on the constitutionality of the statutes, the district court credited KPA's claim that a facial challenge is appropriate because the statutes' closure provisions make it "impossible for the public or press to know enough facts about any juvenile case to intervene." *Id.* at 862 n.2. Having determined that it was appropriate to address KPA's constitutional claim on its merits, however, the district court found that KPA had failed to establish a right of access to juvenile proceedings under the "experience and logic" test of *Richmond Newspapers* and its progeny, and dismissed the complaint. *Id.* at 863-64.

KPA appeals this decision, arguing that the district court erred in applying the Supreme Court's "experience and logic" test to its claim for access to juvenile proceedings. KPA emphasizes that it does not seek "boundless public access . . . [to] every juvenile court situation." Rather, KPA contends that Kentucky has thrown a complete "shroud of secrecy" over its juvenile proceedings, and that the "experience and logic" test, properly applied, at least requires that the press be given access to information about a juvenile case sufficient to determine whether to seek access to that proceeding, and that there not be an irrebuttable presumption against access to juvenile proceedings. Noting that it does not waive its jurisdictional arguments, the Commonwealth expressly presses on appeal only its jurisdictional argument that Franklin Circuit clerk Janice Marshall is not a proper defendant under the legal fiction of *Ex Parte Young*, 209 U.S. 123 (1909). In addition, the Commonwealth argues that the district court correctly applied the Supreme Court's "experience and logic" test in finding no right of access to juvenile proceedings, because such proceedings are not marked by a history of openness, and because openness would not serve a significant positive role in the functioning of a juvenile court system designed to protect children from the public spotlight. *See Press-Enterprise Co. v. Super. Ct. of Cal. for the County of Riverside*, 478 U.S. 1, 8-9 (1986).

## ANALYSIS

Although the Commonwealth does not expressly pursue its basic jurisdictional arguments on appeal, it has not waived them and, indeed, at oral argument, pointed out that it could not concede jurisdiction. And, we have an independent duty "to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977); *see also Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 525 (1982) ("Because of their unusual nature, and because it would not simply be wrong but indeed would be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction, the rule is well settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court.") (Powell, J., dissenting) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3522, at 45 (1975)). In light of the Commonwealth's jurisdictional arguments in the district court, along with its and the amicus curiae's contentions on appeal stressing the uncertainty of KPA's claim that Kentucky law bars all press access to juvenile proceedings, we are convinced that KPA's First Amendment claim is not sufficiently ripe for federal court adjudication.

Ripeness is a justiciability doctrine designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (internal quotation omitted). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (1997). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, but, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (internal citation and quotation omitted). In performing the ripeness inquiry, we must weigh three factors when deciding whether to address the issues presented for review: 1) "the likelihood that the harm alleged by the plaintiffs will ever come to pass"; 2) "whether the factual

record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims"; and 3) "the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995) (internal quotation and brackets omitted).

We find that KPA's claim that the KUJC denies the media any access to Kentucky's juvenile proceedings in violation of the First Amendment fails to satisfy each of the three prongs of the ripeness inquiry. First, that the Kentucky courts would deny KPA the access it seeks is far from certain. K.R.S. § 610.070(3) allows a judge to grant access to juvenile proceedings to "such persons admitted as the judge shall find have a direct interest in the case or in the work of the court," and under K.R.S. § 610.340(1)(a) juvenile records may be disclosed to "persons authorized to attend a juvenile court hearing pursuant to KRS 610.070" and when "ordered by the court for good cause." The Kentucky courts could reasonably interpret these provisions to allow for limited access to juvenile proceedings by the media, which arguably has a "direct interest in the . . . work of the court." Such an interpretation would transform KPA's constitutional claim, which is based on the assumption that Kentucky denies all media access to its juvenile proceedings, into just the type of "abstract disagreement[]" that the ripeness doctrine–and more to the point, Article III–prevents us from adjudicating. *See Thomas*, 473 U.S. at 580.

KPA offers three basic arguments to show that it faces a concrete and cognizable harm necessitating a facial challenge to the Kentucky statutes at issue. First, KPA contends that it has attempted to gain the desired access, but that its members have been denied admission to juvenile hearings by bailiffs, and access to juvenile records by the circuit and district clerk's office. But just because bailiffs and court clerks have denied KPA the relief it seeks does not mean that Kentucky law would not provide for such access were KPA to assert such a right in the Kentucky courts pursuant to the statutory provisions at issue, which it has not done. Second, KPA argues that because it is unable to obtain any information about pending juvenile cases, it has no idea when a particular case is pending in juvenile court for which its members might want to seek access, thus forcing it to resort to a facial challenge. Although the district court found this argument persuasive, *see Ky. Press Ass'n*, 355 F. Supp. 2d at 862 n.2, we do not. K.R.S. § 610.070(3) provides for access to such persons that the judge finds have a "direct interest in the case *or in the work of the court*." (emphasis added). Were KPA to petition the Kentucky courts for limited access to the dockets and subject matter of juvenile proceedings sufficient to inform its members of specific matters to which they might wish to petition for access, the Kentucky courts could reasonably interpret K.R.S. § 610.070(3) to provide for such access. And finally, KPA argues that the Supreme Court of Kentucky has already denied media access to juvenile proceedings under the relevant statutes, in *F.T.P. v. Courier-Journal*, 774 S.W.2d 444, 446 (Ky. 1989), thus proving that the KUJC forbids KPA the access it seeks. The precise issue decided in *F.T.P.*, however, was whether the KUJC's limitations on public access applied in Kentucky's circuit courts, rather than only in its district courts. Although the Supreme Court of Kentucky upheld the circuit judge's decision denying press access to the juvenile proceeding in his court, and in so doing propounded dicta explaining that "[t]he purpose of the shroud of secrecy and confidentiality . . . is to protect the juvenile," *id.* at 446, the *F.T.P.* court was not presented with the precise question of whether the media enjoys access rights under the "direct interest in the case or in the work of the court" clause of K.R.S. § 610.070(3).[1] Therefore, KPA does not meet the first factor in our ripeness inquiry, as it is far from

---

[1]Moreover, *F.T.P* specifically notes that the plaintiff "did not challenge the constitutionality of the closure statutes, [K.R.S. §§] 610.070 and 610.340," *id.* at 446, which means that not only did the Supreme Court of Kentucky not decide whether the media enjoys access rights under the "direct interest in the case or in the work of the court" clause of K.R.S. § 610.070(3), the court was not asked to interpret the KUJC in light of First Amendment concerns–yet another reason to doubt KPA's unsubstantiated claim that Kentucky law casts a complete and irrebuttable "shroud of secrecy" over the state's juvenile proceedings.

certain that Kentucky law actually closes juvenile proceedings and records entirely to the media. *See Adult Video Ass'n*, 71 F.3d at 568.

Neither does KPA meet the other two prongs of the test for ripeness. Although, as a facial challenge, the factual basis of KPA's claim essentially needs no further developing, there is one fact of crucial importance that has yet to be determined: whether Kentucky law, as interpreted by the Kentucky courts, completely closes juvenile proceedings and records to the media, as KPA contends. *See id.* Until we know the answer to this question, our adjudicating KPA's First Amendment claim would constitute entangling ourselves in an abstract disagreement, contrary to the purposes undergirding the ripeness doctrine, and in contravention of Article III. *See Thomas*, 473 U.S. at 580. And finally, we perceive little hardship to KPA in our dismissing its case at this time. *See Adult Video Ass'n*, 71 F.3d at 568. The challenged statutes have been in effect since 1987, and KPA admits (in fact, even argues) that there is not a specific pending juvenile case for which it is seeking access. Our dismissing its case requires only that KPA (or some similarly situated party) obtain an adjudication by the Kentucky courts of the extent, if any, to which Kentucky law allows the media access to juvenile proceedings and records.

Because KPA's First Amendment claim fails each of the three factors in the test for ripeness, the proper course is for us to dismiss this appeal for failure to present a case or controversy sufficiently ripe for federal court adjudication.

## CONCLUSION

KPA's First Amendment claim rests upon the mere speculation that the Kentucky courts would interpret Kentucky law in a way that completely denies the media access to juvenile proceedings and records. We therefore **DISMISS** the appeal on ripeness grounds, and **REMAND** this matter to the district court with instructions that it be **DISMISSED** as unripe.