**In re Eric MLINCEK and Holly Mlincek, Debtors.**

**Eric Mlincek and Holly Mlincek, Plaintiffs,**

v.

**United States of America, Defendant.**

Bankruptcy No. 05–27639.
Adversary No. 06–1107.

United States Bankruptcy Court,
N.D. Ohio.

Sept. 26, 2006.

Anita A. Gill, Special Assistant United States Attorney Cleveland, Peter Sklarew,

Tax Division, Dept. of Justice, Washington, D.C., for the government.

Kevin M. Ryan, Ryan Legal Services, North Ridgeville, OH, for Erik Mlincek, Holly J. Mlincek, Plaintiffs.

Anita A. Gill, Peter A. Sklarew, Tax Division, Dept. of Justice, Washington, DC, for IRS, Insolvency Group 3, Defendant.

## MEMORANDUM OF OPINION

ARTHUR I. HARRIS, Bankruptcy Judge.

Before the Court is the defendant's motion to dismiss (Docket # 7). The defendant urges dismissal of this adversary proceeding because the plaintiff's complaint does not present a justiciable case or controversy. Because the Court declines to exercise jurisdiction for prudential reasons, the defendant's motion to dismiss is granted.

## JURISDICTION

In the present case, the debtors have brought this adversary proceeding under 11 U.S.C. § 523(a)(1), which excepts from discharge any debt—

for a tax or a customs duty-

(A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of [Title 11], whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, or equivalent report or notice, if required-

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax . . . .

The debtors allege that they owe federal income tax for the year 2000 and that they timely filed a return for that year. Thus, unless the debtors return was fraudulent, or the debtors willfully attempted to evade their federal income tax for the year 2000, their tax debt would not be excepted from discharge under 11 U.S.C. § 523(a)(1).

The debtors have made no allegations regarding an attempt to evade or defeat their 2000 federal income tax, nor have the debtors made any allegations regarding a pending or threatened action by the United States to collect this tax or to commence a criminal investigation or prosecution regarding this tax. The United States, in its motion to dismiss, does not dispute the inapplicability of subparagraphs 523(a)(1)(A) and (B). The United States also asserts that it has no present intention of seeking a nondischargeability determination under subparagraph 523(a)(1)(C). In fact the United States asserts that the IRS intends to abate the debtors' tax debt upon entry of the debtors' discharge.

The debtors commenced this adversary proceeding pursuant to Bankruptcy Rule 4007, which provides that either "[a] debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt." Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). Bankruptcy judges may hear and determine "all core proceedings arising under title 11 . . . and may enter appropriate orders and judgments . . . ." 28 U.S.C. § 157(b)(1). The District Court has jurisdiction "over all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334. Pursuant to 28 U.S.C. § 157(a), the United States District Court for the Northern District of Ohio has referred to the Bankruptcy Court for the Northern District of Ohio "all cases

under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11." Local General Order No. 84.

Article III, however, limits federal judicial power to "cases" and "controversies." U.S. Const. Art. III, sec. 2; *see also Jones v. Griffith,* 870 F.2d 1363, 1366 (7th Cir. 1989) ("[T]he Constitution confines the jurisdiction of the federal courts to cases or controversies (these are, for all intents and purposes, synonyms . . .)").

Embodied in the words "cases" and "controversies" are two complementary

> but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.
>
> Justiciability is itself a concept of uncertain meaning and scope.

*Flast v. Cohen,* 392 U.S. 83, 94–95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

■■■ "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." *Renne v. Geary,* 501 U.S. 312, 315, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991); *see Flast,* 392 U.S. at 97, 88 S.Ct. 1942 (noting that doctrine of justiciability "has become a blend of constitutional requirements and policy considerations"). "Whether justiciability exists . . . has most often turned on evaluating both the appropriateness of the issues of decision by courts and the hardship of denying judicial

relief." *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 156, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J. concurring). Courts must determine whether a case presents a justiciable case or controversy on the particular facts of the case rather than on the application of abstract rules. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 297, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) ("The difference between an abstract question and a 'case or controversy' is one of degree . . ., and is not discernible by any precise test.").

> The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'

442 U.S. at 298, 99 S.Ct. 2301 (quoting *Railway Mail Assn. v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)). *See also Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

Efforts to determine justiciability have led courts to develop a number of specific sub-categories: advisory opinions, ripeness, mootness, standing, and political questions. "But whether courts speak in terms of 'justiciability,' 'standing,' or 'ripeness,' they all are asking the same question: does a case or controversy exist?" *Oldham v. Am. Civ. Liberties Union Found. of Tenn., Inc.,* 849 F.Supp. 611, 614 (M.D.Tenn.1994). Courts may decide a case under the general heading of justiciability rather than resorting to the "fre-

quently question-begging terminology of any single concept." 13 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3529 (2d ed.1984); *see Babbitt,* 442 U.S. at 297–304, 99 S.Ct. 2301 (holding certain challenges of constitutionality of state labor statute were "not justiciable"); *see also Assiniboine & Sioux Tribes of Ft. Peck Indian Reservation v. Bd. of Oil & Gas Conservation,* 792 F.2d 782, 787 (9th Cir.1986) ("[A]lthough for clarity, we discuss [ripeness, advisory opinions, and standing] separately, we recognize that a flexible approach to justiciability, that is less concerned with specific categories, and more with underlying policies may be most useful."); *Ad Hoc Comm. on Judicial Admin. v. Mass.,* 488 F.2d 1241 (1st Cir.1973) (affirming dismissal of a suit to restructure Massachusetts state courts for "failure to state a justiciable cause of action."), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763.

 Against the statutory backdrop of 11 U.S.C. § 523 and the express grant of judicial authority under 28 U.S.C. §§ 1334 and 157, the Court is reluctant to conclude that the instant adversary proceeding does not present a justiciable case or controversy for purposes of Article III. Of course, a statute cannot grant more authority to the federal courts than is granted by the Constitution. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). As noted above, however, justiciability is "a concept of uncertain meaning and scope." *Flast,* 392 U.S. at 95, 88 S.Ct. 1942. Moreover, this does not present a challenge to an as yet unimplemented regulation, nor do the plaintiffs request any extraordinary and extra-judicial relief. *See, e.g., Ad Hoc Comm. on Judicial Admin.,* 488 F.2d 1241. Indeed, the Court regularly grants the relief sought by the plaintiffs: a determination of dischargeability. Even the facts as alleged seem to present enough of a concrete case or controversy to pass Article III muster. The debtors owe a debt. They have obtained a discharge of their debts. The debtors only ask the Court to determine whether their tax debt was discharged, and 28 U.S.C. §§ 1334 and 157 and Local General Order No. 84 give the Court authority to make that determination. *See also* Fed. R. Bankr.P. 4007.

 But possessing authority and exercising it are separate considerations, and the concept of justiciability encompasses both. *Renne,* 501 U.S. at 315, 111 S.Ct. 2331 ("Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so."); *see also Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) ("The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.' ") (quoting *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57, n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)); *Kentucky Press Ass'n v. Kentucky,* 454 F.3d 505, 509 (6th Cir.2006) (same).

> Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'

*Nat'l Park Hospitality Ass'n,* 538 U.S. at 807–08, 123 S.Ct. 2026 (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In deciding whether a case is ripe for adjudication, courts weigh three factors: "1) 'the likelihood that the harm alleged by the plaintiffs will ever come to

pass'; 2) 'whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims'; and 3) 'the hardship to the parties if judicial relief is denied at this stage in the proceedings.'" *Kentucky Press Ass'n*, 454 F.3d at 509 (quoting *Adult Video Ass'n v. Dep't of Justice*, 71 F.3d 563, 568 (6th Cir.1995)).

At first blush, it appears that this case is ripe for adjudication. The debtors have received a discharge, and any facts that would except their tax debt from discharge have already occurred. On closer inspection, however, the ripeness factors, as well as a healthy respect for separation of powers, weigh in favor of dismissal. First, the debtors have not alleged any harm. They have not alleged that the United States has commenced any collection activities, nor have they alleged that the United States is even considering collection activities. The have every reason to believe that their tax debt will be discharged, and any fear of a future dischargeability action by the United States under subsection 523(a)(1)(C) is remote at best, especially given the United States' assertions in its motion to dismiss. If in fact a dischargeability action by the United States were well-founded, then the debtors have only themselves to blame, and they should not benefit by a preemptive suit when there are currently no facts alleged by the debtors or known by the United States that would even suggest a willful attempt to evade income tax. *Cf. Brennan v. Rhodes*, 423 F.2d 706 (6th Cir.1970) (no case or controversy where plaintiff sought declaration that certain sections of Ohio Revised Code were unconstitutional but failed to allege danger of prosecution under challenged sections).

Second, not only is the factual record not fully developed, on the question of tax evasion, the record is non-existent. The debtors have alleged no facts that would suggest a willful attempt to evade or de-feat taxes, and the United States has stated that it has no reason to believe any such attempt was made. This second factor illustrates the potential separation of powers concerns raised in this case. Allowing this adversary proceeding to go forward would force the United States to expend limited resources where it otherwise would not. The United States would be forced to investigate whether the debtors did in fact willfully attempt to evade taxes, or else be forever barred by issue preclusion from asserting nondischargeability under subparagraph 523(a)(1)(C) should evidence of evasion arise in the future. The Court is disinclined to issue orders that effectively direct an executive agency to investigate an entity the agency otherwise would not. *Cf. Ohio Hospital Ass'n v. Shalala*, 978 F.Supp. 735, 738–40 (N.D.Ohio 1997) (declining to declare certain actions not yet taken by the government unconstitutional or improper under relevant statute), *aff'd in part*, 201 F.3d 418, 425 (6th Cir.1999).

■ Third, the debtors' complaint does not present any issues of sufficient immediacy or reality to warrant judicial action, and the debtors' would suffer no hardship if the case were dismissed without prejudice. Debts are generally presumed to be discharged, and as noted above, the United States intends to abate the debt once the debtors' discharge is entered. The debtors have alleged no facts that would suggest the debt is nondischargeable, nor has the United States given any indication that it believes the debt is nondischargeable. Thus, this adversary proceeding requires the Court and the defendant to speculate whether the debtors may, under some unknown set of facts, have willfully attempted to evade income tax due six years ago. There is no reason to expend judicial resources to open an inquiry where none was thought necessary or to resolve a dispute

where apparently none exists. Should the United States commence collection activities or indicate an intention to collect, the debtors are free to reopen their case and commence a new adversary proceeding. Permitting the case to go forward, on the other hand, would subject the United States to unnecessary hardship by requiring it to expend resources to search for evidence of facts no one has alleged.

Accordingly, the Court declines to exercise jurisdiction for prudential reasons, and the United States' motion to dismiss is granted. Dismissal is without prejudice.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is granted. The above-captioned adversary proceeding is dismissed without prejudice.

IT IS SO ORDERED.